UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN ASSOCIATION OF PHYSICS
TEACHERS, et al.,

          *Plaintiffs*,

    v.

NATIONAL SCIENCE FOUNDATION,
et al.,

          *Defendants*.

Case No. 1:25-cv-01923-JMC

**PLAINTIFFS' COMBINED REPLY IN SUPPORT OF
MOTION FOR A PRELIMINARY INJUNCTION
AND OPPOSITION TO MOTION TO DISMISS**

Steven Y. Bressler (D.C. Bar No. 482492)
Tsuki Hoshijima
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
sbressler@democracyforward.org
thoshijima@democracyforward.org

Nathan L. Walker (*pro hac vice*)
Celine Purcell (*pro hac vice*)
Emily Kirk (*pro hac vice*)
Heather C. Bates (*pro hac vice* forthcoming)
THE NORTON LAW FIRM PC
300 Frank H. Ogawa Plaza, Suite 450
Oakland, CA 94612
Tel: (510) 906-4900
nwalker@nortonlaw.com
cpurcell@nortonlaw.com
ekirk@nortonlaw.com
hbates@nortonlaw.com

## TABLE OF CONTENTS

**Table of Authorities** ................................................................................................... ii

**Introduction** ............................................................................................................... 1

**Argument** ..................................................................................................................... 2

I.      Plaintiffs are likely to succeed on the merits. ................................................... 2

    A.    NSF's standing challenge is misframed and foreclosed by circuit precedent. ............ 2

    B.    NSF's actions violate the Administrative Procedure Act. ................................. 6

        1)    Plaintiffs challenge discrete final agency actions and do not bring a programmatic challenge. ........................................................................... 6

        2)    The APA waives sovereign immunity for Plaintiffs' claims. ....................... 8

        3)    Grant termination decisions are not committed to NSF's discretion. ........ 11

        4)    NSF's actions are arbitrary and capricious. ............................................. 13

        5)    NSF's actions are contrary to law. .......................................................... 13

    C.    NSF's actions violate the Constitution. ...................................................... 14

        1)    NSF violated the separation of powers, the Spending Clause, and the Appropriations Clause ......................................................................... 14

        2)    NSF violated the Fifth Amendment Due Process clause. .......................... 15

            (i)    The Mass Termination Action, taken without any notice to Plaintiffs, violated their due process rights. ................................. 15

            (ii)    Implementation of 2 C.F.R. § 200.340(a)(4) to terminate Plaintiffs' grants is void for vagueness as applied to Plaintiffs. .................. 17

II.      Plaintiffs are likely to suffer irreparable harm absent preliminary relief. .......... 18

III.     The balance of equities and public interest weigh in Plaintiffs' favor. .............. 20

IV.     The requested preliminary relief is appropriate, and the Court should enter the relief without a stay pending appeal and without a bond. .......................................... 20

V.      Plaintiffs have adequately alleged section 706(1) and ultra vires claims. .......... 21

    A.    Plaintiffs have stated a claim to compel agency action unlawfully withheld. ........... 21

    B.    Plaintiffs have stated a claim to set aside Defendant Stone's ultra vires action ........ 25

**Conclusion** .............................................................................................................. 25

## TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Gardner*, 387 U.S. 136 (1967) ................................................................11, 12

*Al Otro Lado v. Exec. Off. for Immigr. Rev.*, 138 F.4th 1102 (9th Cir. 2025) ...........................22, 23, 25

*Am. Foreign Serv. Ass'n v. Trump*, No. 1:25-cv-01030, 2025 WL 1695059 (D.D.C. June 17, 2025)...22

*Am. Forest Res. Council v. United States*, 77 F.4th 787 (D.C. Cir. 2023) ...........................................15

*Am. Near E. Refugee Aid v. USAID*, 703 F. Supp. 3d 126 (D.D.C. 2023).............................................16

*Ass'n for Educ. Fin. & Pol'y v. McMahon*, No. 1:25-cv-00999, 2025 WL 1568301 (D.D.C. June 3, 2025).....................................................................................................................................................8

*Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564 (1972)...........................................................17, 18

*Bennett v. Spear*, 520 U.S. 154 (1997) .................................................................................................6

*Bowen v. Massachusetts*, 487 U.S. 879 (1988).................................................................................9, 10

*Bridgeport Hosp. v. Becerra*, 108 F.4th 882 (D.C. Cir. 2024)................................................................4

*California v. Texas*, 593 U.S. 659 (2021) ...............................................................................................5

*Career Colls. & Sch. of Texas v. Dep't of Educ.*, 98 F.4th 220 (5th Cir. 2024) .....................................21

*Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322 (D.C. Cir. 1996) ......................................................20

*Chi. Women in Trades v. Trump*, No. 1:25-cv-02005, 2025 WL 1331743 (N.D. Ill. May 7, 2025)......15

*City & Cnty. of S.F. v. Trump*, 897 F.3d 1225 (9th Cir. 2018) ........................................................14, 17

*Climate United Fund v. Citibank, N.A.*, No. 1:25-cv-00698, 2025 WL 1131412 (D.D.C. Apr. 16, 2025) ......................................................................................................................................................19

*Cnty. of Santa Clara v. Trump*, 275 F. Supp. 3d 1196 (N.D. Cal. 2017) ...............................................16

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799 (2024)................................5, 6

*Ctr. for Sustainable Econ. v. Jewell*, 779 F.3d 588 (D.C. Cir. 2015) ...................................................3, 4

*Dalton v. Specter*, 511 U.S. 462 (1994) ...............................................................................................15

*Dep't of Com. v. New York*, 588 U.S. 752 (2019) ..................................................................7, 11

*Dep't of Educ. v. California*, 145 S. Ct. 966 (2025) ..................................................................11

*District of Columbia v. USDA*, 444 F. Supp. 3d 1 (D.D.C. 2020) ...........................................19

*Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002)......................................10

*Harmon v. Thornburgh*, 878 F.2d 484 (D.C. Cir. 1989) .............................................................5

*Heckler v. Chaney*, 470 U.S. 821 (1985) ..................................................................................11

*Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017) ...............................................................20

*Hisp. Affs. Project v. Acosta*, 901 F.3d 378 (D.C. Cir. 2018) ....................................................8

*Htet v. Trump*, No. 1:24-cv-01446, 2025 WL 522033 (D.D.C. Feb. 18, 2025)........................2

*Hunt v. Wash. State Apple Advert. Comm'n,* 432 U.S. 333 (1977).............................................3

*In re Aiken Cnty.*, 725 F.3d 255 (D.C. Cir. 2013) .....................................................................15

*In re GTE Serv. Corp.*, 762 F.2d 1024 (D.C. Cir. 1985) ...........................................................21

*Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420 (D.C. Cir. 2004)........................................6

*John Doe Co. v. CFPB*, 849 F.3d 1129 (D.C. Cir. 2017)...........................................................19

*Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682 (1949)...........................................26

*Lincoln v. Vigil*, 508 U.S. 182 (1993) .......................................................................................13

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990) ...................................................................7

*Massachusetts v. Kennedy*, No. 1:25-cv-10814, 2025 WL 1371785 (D. Mass. May 12, 2025)..............8

*Md. Dep't of Hum. Res. v. HHS*, 763 F.2d 1441 (D.C. Cir. 1985) .............................................9

*Me. Cmty. Health Options v. United States*, 590 U.S. 296 (2020)..............................................9

*Merrill v. Milligan*, 142 S. Ct. 879 (2022)................................................................................11

*Milk Train v. Veneman*, 310 F.3d 747 (D.C. Cir. 2002) ...........................................................13

*Nat'l Council of Nonprofits v. OMB*, No. 1:25-cv-00239, 2025 WL 597959 (D.D.C. Feb. 25, 2025) .22

*Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569 (1998) ...............................................18

*Nat'l Fed'n of Indep. Bus. v. OSHA*, 595 U.S. 109 (2022)......................................................5

*Nat'l Min. Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399 (D.C. Cir. 1998) .................5

*Nat'l Transp. Emps. Union v. Vought*, 774 F. Supp. 3d 1 (D.D.C. 2025) ..........................8, 16

*Nat'l Urban League v. Trump*, No. 1:25-cv-00471, 2025 WL 1275613 (D.D.C. May 2, 2025) ..........17

*NB ex rel. Peacock v. District of Columbia*, 794 F.3d 31 (D.C. Cir. 2015) ...........................17

*New York v. McMahon*, No. 1:25-cv-10601, 2025 WL 1463009 (D. Mass. May 22, 2025) ................15

*New York v. Trump*, 133 F.4th 51 (1st Cir. 2025)........................................................8

*Norton v. S. Utah Wilderness All.*, 542 U.S. 55 (2004) ...........................................22

*Ramah Navajo Sch. Bd., Inc. v. Babbitt*, 87 F.3d 1338 (D.C. Cir. 1996)................................13

*St. Bernard Par. Gov't v. United States*, 134 Fed. Cl. 730 (2017) .......................................16

*Thakur v. Trump*, No. 3:25-cv-04737, 2025 WL 1734471 (N.D. Cal. June 23, 2025)..................passim

*Trump v. CASA, Inc.*, No. 24A884, 2025 WL 1773631 (U.S. June 27, 2025)...................................4, 22

*United States v. Texas*, No. 22-58 (U.S. Nov. 29, 2022)........................................................5

*Warth v. Seldin*, 422 U.S. 490 (1975) .....................................................................4

*Webster v. Doe*, 486 U.S. 592 (1988) ....................................................................12

*Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9 (2018) ....................................12

*Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457 (2001)..........................................................6

*Widakuswara v. Lake*, 1:25-cv-01015, 2025 WL 1166400 (D.D.C. April 22, 2025) ......................25

*Wisconsin Gas Co. v. FERC*, 758 F.2d 669 (D.C. Cir. 1985) ................................................19

**Statutes**

31 U.S.C. § 6304 ........................................................................................16

42 U.S.C. § 1862a.......................................................................................24

42 U.S.C. § 1862k ...................................................................................................................12

42 U.S.C. § 1862p-4 .........................................................................................................23, 24

42 U.S.C. § 1862s-5 .....................................................................................................23, 24, 25

42 U.S.C. § 1870 ....................................................................................................................12

42 U.S.C. § 1873 ....................................................................................................................12

42 U.S.C. § 19012 ........................................................................................................23, 24, 25

5 U.S.C. § 701 .......................................................................................................................11

5 U.S.C. § 702 .....................................................................................................................9, 10

5 U.S.C. § 705 .......................................................................................................................21

5 U.S.C. § 706 ............................................................................................................4, 5, 11, 22

## Rules and Regulations

2 C.F.R. § 200.340 ............................................................................................................17, 18

2 C.F.R. § 200.399 ................................................................................................................17

LCvR 7 ...................................................................................................................................2

## Other Authorities

136 Cong. Rec. S17293, 1990 WL 170853 (Oct. 26, 1990).................................................25

Letter from Representative Zoe Lofgren, et al., to Acting Director Brian Stone, NSF (May 8, 2025),
    https://perma.cc/FWY3-U9FW ......................................................................................14

**INTRODUCTION**

Defendants (collectively, "NSF") make no attempt to defend the indefensible. NSF does not argue that its decisions to radically change agency priorities and terminate grants *en masse* through boilerplate notices were the product of reasoned decisionmaking. NSF does not dispute that it failed to consider the priorities that Congress assigned to the agency or the significant reliance interests of grantees and researchers. Nor does NSF dispute that NSF's change in agency priorities is contrary to law and congressional priorities.

Instead, NSF offers various meritless procedural defenses. NSF's challenge to Plaintiffs' standing relies on an argument that the Administrative Procedure Act ("APA") does not allow vacatur—an argument that is foreclosed by D.C. Circuit precedent. Plaintiffs challenge discrete final agency actions with concrete legal consequences for Plaintiffs. Plaintiffs do not seek compensatory money damages, but rather vacatur of unlawful actions and prospective injunctive relief. NSF grant terminations do not fall within the rare category of unreviewable agency action.

Plaintiffs also have shown a likelihood of success on (and properly pled) their claims that NSF's actions are contrary to statutes governing NSF as well as the Constitution. NSF's refusal to spend money for the purposes and programs that Congress mandated violates the separation of powers, Spending Clause, and Appropriations Clause. Grant terminations without any notice or process violate Plaintiffs' due process rights, and NSF's application of its award criteria is unconstitutionally vague.

NSF does not seriously grapple with the fifteen declarations Plaintiffs filed establishing imminent, irreparable injury. Against Plaintiffs' established harm on one side of the ledger, NSF offers only an asserted interest in following Presidential directives—even though that does not excuse arbitrary, capricious, unlawful, and unconstitutional actions.

1

The Court should grant Plaintiffs' motion for a preliminary injunction, ECF No. 3, and deny NSF's motion to dismiss, ECF No. 15.[1]

## ARGUMENT

Plaintiffs address the four factors that support their preliminary injunction request in Sections I–III and other issues related to preliminary relief in Section IV.

This Court should deny NSF's motion to dismiss because NSF violated LCvR 7(n), which requires that "[i]n cases involving the judicial review of administrative agency actions, unless otherwise ordered by the Court, the agency must file a certified list of the contents of the administrative record with the Court … simultaneously with the filing of a dispositive motion." NSF has not complied with that rule or produced any administrative record to Plaintiffs.[2] If the Court chooses to consider the motion to dismiss, it should deny the motion with respect to the counts on which Plaintiffs sought preliminary relief (Counts I, II, IV, V, and VI) for the reasons explained in Section I. And it should deny the motion to dismiss the remaining counts of the complaint (Counts III and VII) for the reasons explained in Section V.

## I.    <u>Plaintiffs are likely to succeed on the merits.</u>

### A.    **NSF's standing challenge is misframed and foreclosed by circuit precedent.**

NSF argues that the APA does not authorize vacatur of agency action, but it misframes that argument as a challenge to associational standing. NSF Br. 8–15. NSF's argument pertains to

---

[1]    NSF combined its opposition to Plaintiffs' preliminary injunction motion with its motion to dismiss and docketed the brief in identical form at ECF Nos. 15 and 16 ("NSF Br."). Plaintiffs similarly combine their preliminary injunction reply and motion to dismiss opposition.

[2]    A record is required alongside a dispositive motion when seeking review of "administrative agency actions," and there is no exception for when a defendant argues that the action is non-final, nor can NSF cite one. *See* NSF Br. 16 n.3. The case NSF does cite considered a motion for relief from the local rule requirement. *Htet v. Trump*, 2025 WL 522033, at *9 (D.D.C. Feb. 18, 2025). NSF filed no such motion. The motion to dismiss is not properly before this Court.

the ultimate relief available in this case, not a threshold standing issue. Regardless, NSF's argument is foreclosed by circuit precedent that has long recognized vacatur as an APA remedy for unlawful agency action.

NSF raises no challenge to the standing of Plaintiffs that themselves held grants that NSF terminated. *Id.* at 15. NSF challenges only the associational standing of Plaintiffs whose members were harmed by grant terminations. As to those Plaintiffs, NSF challenges only one prong of associational standing. An association has standing to sue on behalf of its members upon a three-part showing: "(1) 'its members would otherwise have standing to sue in their own right;' (2) 'the interests it seeks to protect are germane to the organization's purpose;' and (3) 'neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Ctr. for Sustainable Econ. v. Jewell*, 779 F.3d 588, 596 (D.C. Cir. 2015) (quoting *Hunt v. Wash. State Apple Advert. Comm'n,* 432 U.S. 333, 343 (1977)). NSF does not dispute the first two prongs. And under the third prong, NSF does not argue that the claim asserted requires member participation. NSF Br. 10. Instead, NSF argues only that the relief requested "requires the participation of every grantee whose grant was terminated." *Id.* at 15.

Plaintiff associations have standing because the relief requested does not require individual participation by their members. The Supreme Court has long recognized that an association may "seek[] a declaration, injunction, or some other form of prospective relief" on behalf of its members because "it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured." *Warth v. Seldin*, 422 U.S. 490, 515 (1975). The principal remedy sought here—declaring unlawful and vacating the challenged NSF actions—would inure to the benefit of Plaintiffs' members. That remedy does not require "individualized proof" of damages that are "not common to the entire membership,"

3

which might preclude associational standing. *Id.* at 515–16. As the D.C. Circuit has recognized, member participation is unnecessary when "the relief [that an association] seeks is invalidation of agency action." *Ctr. for Sustainable Econ.*, 779 F.3d at 597.

NSF argues in response that vacatur is unavailable under the APA. NSF Br. 11–13. NSF attempts to frame that issue as a threshold standing defect, but it is more properly a remedy question. After all, NSF is not arguing that any individual member of an association, if they were to participate directly in this suit, would be able to obtain that remedy. NSF's argument is that neither an association nor an individual can obtain vacatur. That argument does not pertain to the third prong of the associational standing inquiry, which is about whether an association can sue on behalf of its members.

Regardless, vacatur is available under the APA under binding precedent. NSF cites *Trump v. CASA, Inc.*, No. 24A884, 2025 WL 1773631 (U.S. June 27, 2025), where the Court held that universal injunctions that prohibit the enforcement of a law or policy against anyone "fall[] outside the bounds of a federal court's equitable authority under the Judiciary Act." *Id.* at *8. But *CASA* expressly did not address the scope of relief available under the APA. *Id.* at *8 n.10 (APA relief is a "distinct question").

*CASA* thus did not disturb longstanding circuit precedent recognizing vacatur as the "normal remedy" under 5 U.S.C. § 706. *See Bridgeport Hosp. v. Becerra*, 108 F.4th 882, 890 (D.C. Cir. 2024); *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 831 (2024) (Kavanaugh, J., concurring) ("[T]he D.C. Circuit… has… long recognized vacatur as the usual relief when a court holds that agency [actions] are unlawful."); Transcript of Oral Argument at 35, *United States v. Texas*, No. 22-58 (U.S. Nov. 29, 2022) (Roberts, C.J.) (describing vacatur as "established practice under the APA" that "those of us who were on the

4

D.C. Circuit, do, you know, five times before breakfast, that's what you do in an APA case").
Vacatur means that the agency action itself is invalidated, "not that [its] application to the
individual petitioners is proscribed." *Nat'l Min. Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d
1399, 1409 (D.C. Cir. 1998) (quoting *Harmon v. Thornburgh*, 878 F.2d 484, 495 n.21 (D.C. Cir.
1989)). Vacatur as an APA remedy follows from "the text and history of the APA." *Corner Post*,
603 U.S. at 829 (Kavanaugh, J., concurring). The "common and contemporaneous meaning," *id.*
at 830, of APA's authorization to reviewing courts to "set aside" agency action, 5 U.S.C. § 706, is
that a court can vacate unlawful agency action.

Without acknowledging binding Circuit precedent, NSF relies mainly on academic
literature to argue that interpreting the APA to allow vacatur would be inconsistent with
founding-era equity practices. NSF Br. 11–13. But the D.C. Circuit has recognized that vacatur
of unlawful agency actions is part of "[t]raditional administrative law principles." *Harmon*, 878
F.2d at 495 n.21. NSF also argues, citing a non-APA case, that remedies ordinarily operate on
specific parties rather than legal rules in the abstract. NSF Br. 13 (citing *California v. Texas*, 593
U.S. 659, 672 (2021)). Perhaps that is so in a lawsuit between private parties, but there is nothing
incongruous about Congress authorizing broad judicial review of agency action, given that
Congress is the source of all agency authority in the first place. *See Nat'l Fed'n of Indep. Bus. v.
OSHA*, 595 U.S. 109, 117 (2022). And there is good reason for Congress to have authorized such
relief in the APA: "Eliminating the vacatur remedy would … insulat[e] many agency [actions]
from meaningful judicial review (which perhaps is the Government's motivation for its recent
campaign)." *Corner Post*, 603 U.S. at 832 (Kavanaugh, J., concurring). In sum, Plaintiff

associations can pursue the remedies requested even without the direct participation of their members because vacatur is an available APA remedy under binding circuit precedent.[3]

**B.    NSF's actions violate the Administrative Procedure Act.**

Plaintiffs challenge NSF's Change in Priorities Decision and Mass Termination Action under the APA. NSF raises a series of procedural objections, but the Court should reject NSF's attempt to insulate its unlawful actions from judicial review. On the merits, NSF attempts no response to the claims that its actions are arbitrary and capricious, as well as contrary to law.

**1)    Plaintiffs challenge discrete final agency actions and do not bring a programmatic challenge.**

The Change in Priorities Decision and Mass Termination Action are each final agency actions that are appropriate for judicial review under the APA. NSF Br. 16–19.

The Change in Priorities Decision was a discrete final action. NSF barely addresses the Decision. NSF Br. 18–19. Instead, it attempts a cursory argument that the Decision was not an "agency action" at all, *id.* at 18 (citing *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004)), but NSF fails to recognize that the term "action" in the APA "cover[s] comprehensively every manner in which an agency may exercise its power," *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 478 (2001). It is unclear whether NSF is arguing that the Decision was not "final" agency action, but to the extent that it is, NSF does not even identify the canonical two-prong test under *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). All NSF does is to quote case law about how the APA does not allow "generalized complaints" about "on-going" agency behavior, with no attempt to apply that case law to the Change in Priorities Decision. NSF Br. 19. In fact, the Decision was a discrete final action because NSF articulated its concrete,

---

[3]    NSF's claim that Plaintiffs impermissibly seek to bypass class action procedures, NSF Br. 14–15, is similarly meritless because the APA authorizes the relief requested.

settled decision that directly determines both how NSF would evaluate previously awarded grants for potential termination and how NSF would review future grant applications.

The Mass Termination Action was also a discrete final action. NSF made a single decision, based on a single rationale, to conduct a mass termination of politically disfavored grants using boilerplate termination notices. As another court recognized in a class action by University of California researchers, NSF adopted a "a categorical policy of executing grant terminations via form letters that referenced only an unexplained change in agency priorities." *Thakur v. Trump*, No. 3:25-cv-04737, 2025 WL 1734471, at *16 (N.D. Cal. June 23, 2025). That court remarked that "[i]n the face of that lockstep action, a court is 'not required to exhibit a naiveté from which ordinary citizens are free.'" *Id.* (quoting *Dep't of Com. v. New York*, 588 U.S. 752, 785 (2019)). As such, it held NSF's "categorical policy" was final agency action. *Id.*

In arguing otherwise, NSF misunderstands the limitation on programmatic APA challenges. NSF Br. 16–18. Vacating the Change in Priorities Decision and the Mass Termination Action would not "require the Court to supervise all the agency's activities and determine how the agency accomplishes each statutorily mandated function." *Id.* at 17. Such a concern arose in *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990), where a plaintiff challenged a so-called "land withdrawal review program" that did not "refer to a single [agency] order or regulation, or even to a completed universe of particular [agency] orders and regulations" and instead referred to "continuing" and "constantly changing" agency operations. *Id.* at 890–91. In contrast, Plaintiffs bring a classic APA challenge to a single completed decision that changed agency priorities and to a single categorical policy of mass-terminating grants without individualized rationales. Each of those actions is "an identified transgression" of law, not "an exercise of broad, unspecified discretion." *Hisp. Affs. Project v. Acosta*, 901 F.3d 378, 388 (D.C.

Cir. 2018). Vacating those completed actions would not require ongoing supervision of all of NSF's activities, as NSF baselessly asserts.

That Plaintiffs challenge both actions at once does not make their challenge an impermissible programmatic attack. *New York v. Trump*, 133 F.4th 51, 68 (1st Cir. 2025) ("[W]e are not aware of any supporting authority for the proposition that the APA bars a plaintiff from challenging a number of discrete final agency actions all at once."). *Association for Education Finance & Policy v. McMahon*, No. 1:25-cv-00999, 2025 WL 1568301 (D.D.C. June 3, 2025), is not to the contrary. There, Judge McFadden concluded that a challenge to the wholesale dismantling of an agency may not be challenged under the APA. *Id.* at *10. He found that the plaintiffs there challenged no "specific order." *Id.* at *4 n.2. In contrast, Plaintiffs challenge two specific NSF actions: a discrete decision to change agency priorities and a categorical decision to terminate grants *en masse*. That those actions affected many people does not make the challenge programmatic. "Defendants can hardly complain that the focus of the action is too broad; it was the [agency that] chose to paint with a broad brush, not plaintiffs." *Nat'l Transp. Emps. Union v. Vought*, 774 F. Supp. 3d 1, 46 (D.D.C. 2025); *see Massachusetts v. Kennedy*, No. 1:25-cv-10814, 2025 WL 1371785, at *10 (D. Mass. May 12, 2025) (enforcement of directives "against hundreds of projects does not make this lawsuit programmatic, even if it is large"). Plaintiffs properly challenge final agency actions.

### 2) The APA waives sovereign immunity for Plaintiffs' claims.

NSF argues that Plaintiffs may not invoke the APA waiver of sovereign immunity because Plaintiffs' suit is for money damages. NSF Br. 19–24. That argument misunderstands both the requested relief and the relevant Supreme Court case law.

The APA authorizes suit against the federal government for "relief other than money damages." 5 U.S.C. § 702. The "ordinary meaning" of the term "money damages" in § 702 is "a

sum of money used as compensatory relief" to "substitute for a suffered loss." *Bowen v. Massachusetts*, 487 U.S. 879, 895 (1988) (quoting *Md. Dep't of Hum. Res. v. HHS*, 763 F.2d 1441, 1446 (D.C. Cir. 1985)).

NSF does not engage at all with Plaintiffs' explanation of why the relief sought is not compensatory money damages. ECF No. 3-1 ("Pls.' Br.") 35–37. Plaintiffs do not seek a judgment that orders any "amount to be paid" or makes any "finding that the Federal Government owed [Plaintiffs] that amount, or indeed, any amount of money." *Bowen*, 487 U.S. at 909–10. The judgment that Plaintiffs seek would not require payment of any past-due sums "to compensate for completed labors." *Me. Cmty. Health Options v. United States*, 590 U.S. 296, 327 (2020). After all, NSF has stated (and does not deny before this Court) that it would pay for costs incurred before the grant termination dates. Pls.' Br. 35–36. Rather, Plaintiffs seek review of an arbitrary and unlawful exercise of federal authority, which is properly redressed by a judgment vacating NSF's unlawful actions, and prospective injunctive relief. ECF No. 2-1 ("Compl.") Prayer for Relief. That relief will affect how NSF will conduct its review when deciding whether to terminate other grants that benefit Plaintiffs and their members or when deciding whether to award future grants.

NSF is thus wrong that the "only result" of that relief would be monetary payment. NSF Br. 20. Vacatur of the unlawful actions would have the effect of restoring a grant relationship in which Plaintiffs may perform work under government funding in compliance with grant terms. Although the eventual likely result of vacating unlawful grant terminations would be disbursement of money, "[t]he fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.'" *Bowen*, 487 U.S. at 893. Plaintiffs do not seek a naked money judgment that would provide an unrestricted

payment to Plaintiffs. Pls.' Br. 36. The failure to pay any particular sum would not necessarily be a violation, enforceable through contempt, of the judgment that Plaintiffs seek. The judgment sought cannot be characterized as "money damages" under 5 U.S.C. § 702.

NSF's principal response is that *Bowen* is no longer good law. In NSF's telling, the Supreme Court overruled *Bowen* in *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002). NSF misreads *Great-West*, which was a case between two private parties—not a case under the APA—and thus did not purport to interpret the meaning of "money damages" in 5 U.S.C. § 702. In *Great-West*, the question was whether ERISA's authorization of "equitable relief" allowed an insurance company to obtain an injunction requiring the payment of money past due under a contractual reimbursement provision. 534 U.S. at 210. As *Great-West* explained, *Bowen* was not controlling because *Bowen* was an APA case, and the *Bowen* suit was "not merely for past due sums." *Id.* at 212. *Great-West*, which is simply nothing like the case at hand, did not purport to overrule *Bowen*. Nor did *Great-West* "reformulate[] and limit[]" *Bowen*'s interpretation of the APA, NSF Br. 23, since the APA was not at issue in that case.[4]

The Supreme Court's emergency stay decision in *Department of Education v. California* did not purport to overrule *Bowen* either. Nor did it state that *Great-West* had overruled *Bowen*. On the contrary, the Supreme Court cited *Bowen*, showing that it remains good law. *Dep't of Educ. v. California*, 145 S. Ct. 966, 968 (2025). In any case, *California* could not have overruled

---

[4]     *Great-West* quotes part of Justice Scalia's *Bowen* dissent, but that is far from "ma[king] Justice Scalia's dissenting opinion in *Bowen* the law," as NSF asserts. NSF Br. 22. In any case, NSF leaves out a key language from that part of Justice Scalia's dissent. Justice Scalia stated that suits seeking to compel payment of money are suits for money damages "since they seek no more than compensation for loss resulting from the defendant's breach of legal duty." *Great-West*, 534 U.S. at 210 (quoting *Bowen*, 487 U.S. at 893 (Scalia, J., dissenting). NSF omits that phrase in its rendition, NSF Br. 19, 22, but that phrase is important—Plaintiffs' suit does not seek compensatory damages resulting from NSF's breach of a legal duty.

*Bowen* or "conclusively" settled any issue about the scope of the APA's sovereign-immunity waiver. NSF Br. 24. NSF's argument to the contrary fails to recognize the limited nature of stay decisions and fails to respond to Plaintiffs' explanation of why *California* does not control this case. Pls.' Br. 40–41; *Merrill v. Milligan*, 142 S. Ct. 879 (2022) (Kavanaugh, J., concurring) (a stay order "is not a ruling on the merits" and "does not make or signal any change" in law).

>        **3)    Grant termination decisions are not committed to NSF's discretion.**

In another attempt to skirt judicial review altogether, NSF asserts that grant terminations are "committed to agency discretion by law." NSF Br. 24–26; 5 U.S.C. § 701(a)(2).[5] That exceedingly narrow exception to APA review does not apply here. The APA embodies a "basic presumption of judicial review," *Abbott Labs. v. Gardner*, 387 U.S. 136, 140 (1967), and it authorizes review for abuse of discretion, 5 U.S.C. § 706(2)(A). The committed-to-discretion exception is limited to "rare circumstances" with "no law to apply" and "no meaningful standard" for judicial review. *Dep't of Com.*, 588 U.S. at 772–73.

NSF does not seem to argue that the Change in Priorities Decision was committed to NSF's discretion. There are ample grounds for review where Congress has defined the agency's priorities, including in statutes requiring NSF to pursue a "core strategy" of "[d]evelop[ing] intellectual capital, both people and ideas, with particular emphasis on groups and regions that traditionally have not participated fully in science, mathematics, and engineering." 42 U.S.C. § 1862k(b)(1); Pls.' Br. 3–6.

---

[5]     NSF cites 5 U.S.C. § 701(a)(1), but that appears to be a mistake because all of NSF's arguments pertain to § 701(a)(2). NSF Br. 24–26. Section 701(a)(1) addresses "statutes [that] preclude judicial review," which applies "when Congress has expressed an intent to preclude judicial review," whereas section 701(a)(2) applies "even where Congress has not affirmatively precluded review." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985).

As to the Mass Termination Action, NSF cites 42 U.S.C. § 1870(c), which authorizes NSF to issue grants that it "deems necessary to carry out the purposes of this chapter," and § 1873(e), which confers "discretion" on NSF to use appropriations in a way to "best realize" statutorily specified objectives. Those statutes do not confer unreviewable discretion, as another court recognized in rejecting the same argument NSF makes here. *Thakur*, 2025 WL 1734471, at *17. After all, a statute conferring discretion on an agency does not, without a clearer statement, confer unreviewable discretion. *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 23 (2018) ("A court could never determine that an agency abused its discretion if all matters committed to agency discretion were unreviewable."); *Abbott Labs.*, 387 U.S. at 141 (APA review available absent "clear and convincing evidence of a contrary legislative intent").[6]

The reference to statutory "purposes" in 42 U.S.C. § 1870(c) incorporates various statutory provisions in which Congress has determined the agency's purposes. Pls.' Br. 3–6. That is hardly a lump-sum appropriation with no statutory direction, as in *Lincoln v. Vigil*, 508 U.S. 182, 192 (1993). *See Ramah Navajo Sch. Bd., Inc. v. Babbitt*, 87 F.3d 1338, 1347 (D.C. Cir. 1996) (explaining in *Lincoln*, "the structure of the statutes involved there" evinced "a congressional intent to grant unfettered discretion to the agency in its allocation of certain funds"). Given the extent of statutory direction Congress imposed on NSF, it is unfathomable that Congress had no "intent to limit [NSF's] discretion." NSF Br. 25. Those "statutory reference point[s]" support judicial review. *Milk Train v. Veneman*, 310 F.3d 747, 751 (D.C. Cir. 2002). As *Lincoln* itself recognized, "an agency is not free simply to disregard statutory responsibilities:

---

[6]    The decision in *Webster v. Doe*, 486 U.S. 592 (1988), that courts could not review an intelligence agency's decision to terminate an employee in the interests of the United States, was in the context of a statute that conferred "extraordinary deference" to the agency for national security reasons, *id.* at 601. The statutes governing scientific funding by NSF do not similarly indicate congressional intent to override the strong presumption of judicial review.

12

Congress may always circumscribe agency discretion to allocate resources by putting restrictions in the operative statutes." *Lincoln*, 508 U.S. at 193.

### 4)    NSF's actions are arbitrary and capricious.

NSF attempts no response to Plaintiffs' argument that the Change in Priorities Decision and Mass Termination Action are arbitrary and capricious. Another court recently concluded that plaintiffs there were likely to succeed on a similar claim against NSF. As that court concluded, NSF's "form termination letters … appear to be in blatant violation of th[e] requirement" that agencies must "provide reasoned explanations for their decisions, particularly when changing a longstanding practice and abruptly upending years of planning and work." *Thakur*, 2025 WL 1734471, at *2. NSF's bare reference to "agency priorities" was an "empty statement" that did "not explain *why* the agency changed its view of how the grant serves statutory priorities." *Id.* at *14. Further, "[t]he pace of the review and the resulting large waves of terminations via form letters further suggests a likelihood that no APA-compliant individualized review occurred." *Id.* NSF also failed to consider significant reliance interests. *Id.* at *15. The *Thakur* court is correct that NSF's actions were likely arbitrary, capricious, and unlawful.

### 5)    NSF's actions are contrary to law.

NSF attempts no response to Plaintiffs' argument that the Change in Priorities Decision and Mass Termination Action are contrary to law. NSF does not address any of the plethora of statutory provisions in which Congress directed NSF to expand the participation in STEM of persons from underrepresented groups. Pls.' Br. 3–6. The *Thakur* court correctly concluded that it was contrary to law for NSF to terminate grants for doing exactly what Congress directed: "[a] decision to terminate a grant because it was directed at broadening representation of an underrepresented group in STEM is directly contrary to Congress's mandates." *Thakur*, 2025 WL 1734471, at *12. NSF may not "cancel[] grants on the basis that they serve the very purposes for

which Congress appropriated the funds." *Id.* at *1. Doing so is a "clear violation of the statutory

mission of the agency" assigned to NSF by Congress.[7] Plaintiffs are likely to succeed on their

claim that NSF's actions are contrary to law.

    **C.**    **NSF's actions violate the Constitution.**

        **1)**    **NSF violated the separation of powers, the Spending Clause, and the Appropriations Clause**

As Plaintiffs showed in their opening brief and supporting declarations, Congress

instructed NSF to provide grants under various programs and it appropriated money for those

purposes. But NSF is now refusing to follow those laws and to fund those programs because of

its undefined "priorities." The Constitution "grants the power of the purse to Congress, not the

President." *City & Cnty. of S.F. v. Trump*, 897 F.3d 1225, 1231 (9th Cir. 2018). NSF's refusal to

spend congressional appropriations and fund programs as mandated by law violates the

constitutional separation of powers as well as the Spending and Appropriations Clauses. Pls.' Br.

31–32. NSF does not even attempt to dispute this premise; rather, it argues that this Court cannot

consider Plaintiffs' constitutional claims because NSF also violated statutes. NSF Br. 33. But that

is not the law. It is well within this Court's purview to adjudicate NSF's unconstitutional actions.

NSF relies entirely on *Dalton v. Specter*, which held that allegations that "the President

has exceeded his statutory authority are not 'constitutional' claims." 511 U.S. 462, 473 (1994).

But "*Dalton*'s holding merely stands for the proposition that when a statute entrusts a discrete

specific decision to the President and contains *no limitations* on the President's exercise of that

authority, judicial review of an abuse of discretion claim is not available." *Am. Forest Res.*

*Council v. United States*, 77 F.4th 787, 797 (D.C. Cir. 2023) (cleaned up). Here, Plaintiffs have

---

[7]    *See also* Letter from Representative Zoe Lofgren, et al., to Acting Director Brian Stone, NSF, at 2 (May 8, 2025), https://perma.cc/FWY3-U9FW.

14

not alleged that the President exceeded unbounded authority granted by statute, but that the "Executive Branch has *no power* to amend or rescind appropriations based on its own view of what the spending priorities should be." Compl. ¶¶ 180 (emphasis added), 205 (NSF's actions "have no basis in any law or other authority"). As courts have recognized, *Dalton* itself distinguished between a claim that the President acted in "absence of *any* statutory authority" and "a claim that the President acted in excess of such authority." *See Chi. Women in Trades v. Trump*, No. 1:25-cv-02005, 2025 WL 1331743, at *4–5 (N.D. Ill. May 7, 2025) (quoting *Dalton*, 511 U.S. at 473). And, as one such court held in rejecting the same misinterpretation of *Dalton* that NSF rests on here, the "Executive Branch *must* respect congressional appropriations; it does not retain discretion to condition the payment of grants based on its political priorities absent a congressional delegation of such authority." *Id*. (citing *In re Aiken Cnty.*, 725 F.3d 255, 259 (D.C. Cir. 2013)); *see also New York v. McMahon*, No. 1:25-cv-10601, 2025 WL 1463009, at *21 (D. Mass. May 22, 2025) (rejecting government's identical argument under *Dalton*).

Thus, "[s]ince there is no act of Congress that empowers the President" or the NSF to cancel properly approved funding *en masse* and impound congressional appropriations based on an undefined change in priorities, "*Dalton* does not apply, and the Court has jurisdiction to perform its traditional duty and consider both the statutory and constitutional claims." *See Nat'l Transp. Emps. Union*, 774 F. Supp. 3d at 42; *see also id*. at 40–42 (analyzing *Dalton*).

### 2)    NSF violated the Fifth Amendment Due Process clause.

#### (i)    The Mass Termination Action, taken without any notice to Plaintiffs, violated their due process rights.

In response to Plaintiffs' due process claim, NSF does not dispute that NSF terminated grants *en masse* without any process and without fair notice. Instead, NSF argues that due

15

process protections do not attach because Plaintiffs do not have a protected property interest in the federal grant funding they were awarded. NSF Br. 34–38. Defendants are mistaken.

NSF awards[8] create a property interest protected by the Fifth Amendment. Plaintiffs and their members "have a legitimate property interest in federal funds that Congress has already appropriated and that the[y] have accepted." *Cnty. of Santa Clara v. Trump*, 275 F. Supp. 3d 1196, 1218 (N.D. Cal. 2017)*, aff'd in part, vacated in part, remanded sub nom. City & Cnty. of S.F. v. Trump*, 897 F.3d 1225 (9th Cir. 2018). Their property interest is created by "an independent source … that secures certain benefits and that support[s] claims of entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Such an interest arises where, as here, the "implementing regulations place substantive limitations on official discretion to withhold award of the benefit upon satisfaction of the eligibility criteria," *NB ex rel. Peacock v. District of Columbia*, 794 F.3d 31, 41 n.15 (D.C. Cir. 2015). Federal regulations place substantive limitations on NSF's discretion to terminate Plaintiffs' awards, *e.g.*, for violating the terms and conditions of the award or pursuant to those terms and conditions, 2 C.F.R. § 200.340(a), and only after determining "that noncompliance cannot be remedied by imposing specific conditions," *id*. § 200.399. Therefore, even if the agreements at issue are ordinary contracts—which they are not—the governing regulation is exactly the type of "independent

---

[8]     NSF's argument rests on its assertion that the NSF awards at issue here are "'ordinary' or 'routine' government contracts." NSF Br. 35 (citation omitted). But as Plaintiffs have explained, Pls. Mem. 38, the grants at issue are not ordinary government contracts. *See Am. Near E. Refugee Aid v. USAID*, 703 F. Supp. 3d 126, 132–34 (D.D.C. 2023). NSF awardees do not provide consideration that confers a "tangible" and "direct" benefit on the government, rather than one that is "generalized or incidental." *Id.* at 132; *St. Bernard Par. Gov't v. United States*, 134 Fed. Cl. 730, 735 (2017). Rather, the purpose of NSF funding is "to carry out a public purpose," not to "acquir[e] . . . property or services or the direct benefit or use of the United States Government." 31 U.S.C. § 6304(1).

Case 1:25-cv-01923-JMC    Document 21    Filed 07/16/25    Page 23 of 31

source" that courts have held elevate a mere contract to the level of a protectible entitlement. *Roth*, 408 U.S. at 577.

NSF relies primarily on *National Urban League v. Trump*, No. 1:25-cv-00471, 2025 WL 1275613 (D.D.C. May 2, 2025), but that case is readily distinguishable. In his decision, Judge Kelley stressed that the plaintiffs had "barely contend[ed] that they … have a protected property interest," *id.* at *18, and that those plaintiffs had failed to "identify a single grant or contract that purportedly supplie[d]" the property interest, *id.* at *15. Here, however, Plaintiffs identified specific terminated awards and demonstrated various ways the terminations have implicated and harmed their property interests. *E.g.*, Pls. Br. 27–28.  Plaintiffs and their members have a protected property interest in their NSF awards and have demonstrated a likelihood of success on the merits that NSF violated their procedural due process rights.

### (ii)    Implementation of 2 C.F.R. § 200.340(a)(4) to terminate Plaintiffs' grants is void for vagueness as applied to Plaintiffs.

NSF does not even attempt to argue that they provided either Plaintiffs or their members with fair notice of the grounds on which their duly awarded grants would be judged. As Plaintiffs explained in their opening brief, NSF's claim that grants "no longer effectuate the program goals or agency priorities," applying 2 C.F.R. § 200.340, is so capacious that it is void for vagueness. Instead NSF relies on *National Endowment for the Arts v. Finley*, 524 U.S. 569 (1998), to argue that this vagueness is fine and no fair notice is required, but NSF is mistaken.

In *Finley*, the Supreme Court recognized that vague standards promote arbitrary and discriminatory enforcement. *Id.* at 588. While the Court noted that constitutional concerns with vague grant selection criteria would be more severe if it involved a criminal statute or regulatory scheme rather than "in the context of grants," *id.*, the Court did not foreclose claims of unconstitutional vagueness for already-awarded grants, nor did it reject a due process claim. The

17

Court was considering whether a prospective grantee had a constitutional interest in an award that had not yet been conferred. *Id.* Here, by contrast, Plaintiffs challenge the *termination* of awards that have already been made—not the selection criteria for a future award that *could* be made. As the Supreme Court has made clear, "procedural protection of property is a safeguard of the security of interests that a person *has already acquired* in specific benefits." *Roth*, 408 U.S. at 576. *Finley* does not foreclose a vagueness challenge in a case where a plaintiff has a property interest, as Plaintiff grant recipients do here. *See supra*.

**II.    Plaintiffs are likely to suffer irreparable harm absent preliminary relief.**

Plaintiffs demonstrated that they are likely to suffer irreparable harm absent preliminary relief. Pls.' Mem. 41-43. NSF does not engage with Plaintiffs' extensive declarations, and its three arguments in response are meritless. *See* NSF Br. 38–40.

*First*, NSF argues that economic harm does not constitute irreparable harm. *Id.* at 39. NSF overreads the caselaw. It cites *John Doe Co. v. CFPB*, 849 F.3d 1129, 1134 (D.C. Cir. 2017), which in turn relied on *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). *Wisconsin Gas* held that "[r]ecoverable monetary loss" is generally not irreparable because of "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation." *Id.* at 674. That statement does not apply when monetary loss is not recoverable, such as here. Plaintiffs cannot later recover damages for APA violations, and NSF concedes that absent a preliminary injunction, the funds Plaintiffs would receive under the grants may expire or be reallocated. Pls.' Br. 43 (citing *Climate United Fund v. Citibank, N.A.*, No. 1:25-cv-00698, 2025 WL 1131412, at *17 (D.D.C. Apr. 16, 2025); *District of Columbia v. USDA*, 444 F. Supp. 3d 1, 34 (D.D.C. 2020)). In any case, Plaintiffs' harm goes beyond monetary loss. Absent preliminary relief, Plaintiffs and their members will not only suffer a loss of funds, but also the cessation and loss of ongoing research and education projects,

layoffs of team members, disruption of their ability to carry out their missions, and for at least

one Plaintiff, WEPAN, a threat to its very existence. *See* Pls.' Br. 42–43 (citing supporting cases,

none of which NSF addresses);[9] *see also Thakur*, 2025 WL 1734471, at *24 (finding irreparable

harm from NSF's grant terminations because "when Plaintiffs' multi-year projects rely heavily

on federal funding, '[a] total loss of federal funding would be catastrophic, and the [Plaintiffs']

need for certainty renders damages inadequate'"). Further, NSF entirely ignores that its

constitutional violations cause irreparable harm that is sufficient on its own to warrant immediate

injunctive relief. *See* Pls.' Br. 43; *see also Thakur*, 2025 WL 1734471, at *24 (citing *Hernandez

v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017)).

 *Second*, NSF asserts that Plaintiffs' harms are speculative and "comprised of 'bare

allegations.'" NSF Br. 39. But the harms identified by Plaintiffs are concrete, already occurring,

and a direct result of NSF's wrongful conduct. And they are supported and established by the

fifteen sworn declarations that Plaintiffs submitted, none of which NSF grapples with. *See* Pls.'

Br. 42–43; ECF Nos. 3-2 to 3-15 (detailing the harms Plaintiffs and their members have

suffered). In response, NSF has offered no competent evidence.

 *Third*, NSF asserts that "[t]he alleged harms … must 'directly result from the action the

movant seeks to enjoin.'" NSF Br. 40. NSF asserts without evidence or explanation that

Plaintiffs' harm depends on "independent market variables." *Id.* But Plaintiffs have shown the

opposite: their harms (not only loss of funds, but also cessation of research and education

programs, reputational injury, and job losses) directly result from NSF's unlawful actions.

---

[9]   The cases cited by NSF for its irreparable harm argument are inapposite. Unlike this case, none of those cited cases involved an agency's termination of grants that threatened the very existence of ongoing grant programs and the livelihood of persons working on them, that made it more difficult for the plaintiff to carry out its mission, or that threatened the plaintiff's very existence.

III.    **The balance of equities and public interest weigh in Plaintiffs' favor.**

NSF argues that denial of preliminary relief is supported by the public interest in allowing this Administration "to take decisive action when it comes to setting [the President's] policy priorities." NSF Br. 40. But agencies, even when effectuating presidential directives, are bound by the law. *See Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322, 1327 (D.C. Cir. 1996) (that an agency is acting based on presidential orders "hardly seems to insulate [it] from judicial review"). Neither NSF nor the public has any legitimate interest in unlawful agency action, even in the service of presidential policy preferences. That NSF cannot even bring itself to defend the merits of its actions before this Court should weigh heavily in the Court's assessment of the preliminary injunction factors. The balance of equities does not favor agency actions that the agency concedes are arbitrary and capricious and contrary to law.

IV.    **The requested preliminary relief is appropriate, and the Court should enter the relief without a stay pending appeal and without a bond.**

Taking a narrow view of the Court's remedial authority, NSF argues that any preliminary relief must be limited to "any specific plaintiff that the Court finds to have established… irreparable harm." NSF Br. 41. But the requested preliminary relief—essentially, setting aside the Change in Priorities Decision and Mass Termination Action during the pendency of this litigation—is available under the APA. 5 U.S.C. § 705; *see* Pls.' Br. 29 (invoking § 705); *see also* Compl. § Prayer for Relief (E) (same).

Section 705 of the APA authorizes a court to "issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705. "[T]he scope of preliminary relief under Section 705 aligns with the scope of ultimate relief under Section 706, which is not party-restricted and allows a court to 'set aside' an unlawful agency action." *Career Colls. & Sch. of*

*Texas v. Dep't of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024); *In re GTE Serv. Corp.*, 762 F.2d 1024, 1026 (D.C. Cir. 1985) (characterizing 5 U.S.C. § 705 as providing court with "statutory authority to stay agency orders pending review"). The plain text of the statute makes it apparent that the APA authorizes preliminary relief that operates on the agency action itself. *See* 5 U.S.C. § 705 (authorizing court to "postpone the effective date of an agency action"). The availability of this APA relief is unaffected by *CASA*. 2025 WL 1773631, at *8 n.10 (scope of APA relief is a "distinct question"); *id.* at *19 (Kavanaugh, J., concurring) ("[I]n cases under the Administrative Procedure Act, plaintiffs may ask a court to preliminarily 'set aside' a new agency [action].").

A stay of any preliminary relief is unwarranted. A stay pending appeal requires the familiar four-factor showing for preliminary relief, *see Am. Foreign Serv. Ass'n v. Trump*, No. 1:25-cv-01030, 2025 WL 1695059, at *1 (D.D.C. June 17, 2025), and NSF has not made the requisite showing. A bond is unwarranted because it would effectively deny Plaintiffs their right to judicial review. *Nat'l Council of Nonprofits v. OMB*, No. 1:25-cv-00239, 2025 WL 597959, at *19 (D.D.C. Feb. 25, 2025); Pls.' Br. 45.

**V.    Plaintiffs have adequately alleged section 706(1) and ultra vires claims.**

**A.    Plaintiffs have stated a claim to compel agency action unlawfully withheld.**

Plaintiffs have adequately pled that, in addition to terminating grants unlawfully, NSF is unlawfully withholding the processing of grant applications and the awarding of grants under programs mandated by law. *See generally* Compl. ¶¶ 171–75.[10]

A reviewing court "shall compel agency action unlawfully withheld." 5 U.S.C. § 706(1). Such a claim arises when "an agency fail[s] to take a discrete agency action that it is required to

---

[10] NSF's motion to dismiss this claim focuses on arguments related to unreasonable delay. NSF Br. 27–32. But Plaintiffs did not make an unreasonable delay claim; rather, they claimed that NSF is withholding actions it is legally required to take, as explained in the Complaint and *infra*.

take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). "If an agency withholds a required action, it violates § 706(1) regardless of its reason for doing so." *Al Otro Lado v. Exec. Off. for Immigr. Rev.*, 138 F.4th 1102, 1121 (9th Cir. 2025). An agency "has 'withheld'" action when it "refuses to accept, in any form, a request that it take a required action." *Id.* at 1122.

Plaintiffs alleged that the law "require[s] NSF to both process applications for" specified grant programs "designed to broaden participation of underrepresented populations in STEM fields" and to "subsequently 'make awards' under those programs." Compl. ¶ 174 (citing 42 U.S.C. §§ 1862p-4; 1862s-5(e); 19012). And Plaintiffs alleged "NSF has withheld these required actions" when it "froze all new awards … to institutions of higher education." *Id.* ¶ 175. Thus, "NSF will no longer fund the very activities that Congress requires it to fund via the above grant programs" and has "unlawfully withheld agency action by 'refus[ing] to accept, in any form, a request that it take a required action.'" *Id.* (quoting *Al Otro Lado,* 138 F.4th at 1122).

Plaintiffs have therefore adequately pled that NSF unlawfully withheld required action under 5 U.S.C. § 706(1). That is all that is required to defeat NSF's motion to dismiss this claim.

NSF's contrary arguments are misplaced and unavailing. Congress required NSF to "make awards" for certain statutorily mandated grant programs, which requires NSF to process applications for those programs. Congress found that "underrepresented populations are the largest untapped STEM talent pools in the United States" and accordingly created a broad mandate that NSF "shall … support programs designed to broaden participation of underrepresented populations in STEM fields." 42 U.S.C. §§ 1862s–5(b), (c). To that end, Congress required in 2022 that NSF:

- "shall make awards to institutions of higher education (or consortia thereof) for the development and assessment of innovative reform efforts designed to increase the recruitment, retention, and advancement of individuals from underrepresented minority groups in academic STEM careers," *id.* § 1862s–5(e)(1);

- "shall make awards to institutions of higher education (or a consortium of such institutions) to implement or expand research-based reforms in undergraduate STEM education for the purpose of recruiting and retaining students from minority groups who are underrepresented in STEM fields," *id.* § 1862s–5(f)(1); and
- "shall make awards, on a competitive basis, to institutions of higher education or non-profit organizations (or consortia of such institutions or organizations) to carry out a comprehensive national initiative to facilitate the development of networks and partnerships to build on and scale up effective practices in broadening participation in STEM studies and careers of groups historically underrepresented in such studies and careers." *Id.* § 19012 ("Eddie Bernice Johnson INCLUDES initiative").

Likewise, the law provides that NSF "shall continue to support the Historically Black Colleges and Universities Undergraduate Program [and] the Louis Stokes Alliances for Minority Participation program." *Id.* § 1862p–4.

NSF has a nondiscretionary duty to take these required actions, but it is unlawfully withholding them. Plaintiffs alleged that NSF has forbidden new funding to colleges, universities, and other higher education institutions, Compl. ¶ 140—contrary to Congress's express finding that fundamental STEM research and education supported by NSF "and conducted by the Nation's universities and colleges are essential to our national security, and to our health, economic welfare, and general well-being." 42 U.S.C. § 1862a(a)(1). NSF attempts to manufacture a factual dispute by claiming the "internet is replete with recent announcements" about NSF grants, but none of internet sources NSF cites—which are outside the pleadings in any event—establish any grants were made recently (as opposed to written about recently), or that they were made in the statutorily mandated programs Plaintiffs cite.

Moreover, the Change in Priorities Decision makes clear that the agency will no longer fund awards under these mandatory programs. Under that Decision, NSF will not fund projects "with more narrow impact limited to subgroups of people based on protected class or characteristics." Compl. ¶ 8. These restrictions prohibit the required programs.

For example, Congress required funding of grants to "increase the recruitment … of individuals from underrepresented minority groups." 42 U.S.C. § 1862s–5(e)(1); *id.* § 1862s–5(f)(1) (similar); *see* Compl. ¶¶ 4 & n.1, 38. The statute requires that such grants are intended to fund activities that reach such groups, including "professional development opportunities for faculty members" from such groups, "mentoring programs" for such groups, "outreach programs" to "precollege students" from those groups, and "stipends for students" from such groups. 42 U.S.C. §§ 1862s–5(e)(3), (f)(3). Similarly, the INCLUDES Initiative requires NSF to fund "the development of networks and partnerships" that are focused on "broadening participation in STEM … of groups historically underrepresented." *Id.* § 19012. So too does the LSAMP program require NSF to fund "strategies for recruitment and retention" of "students from … LSAMP populations," which are defined to include "Blacks and African-Americans, Hispanic and Latino Americans, American Indians, Alaska Natives, Native Hawaiians, and Native Pacific Islanders." *Id.* As Senator Kennedy said in support of the original LSAMP legislation, "[t]his bill reflects our dedication to achieving the greatest possible participation by minorities and women in mathematics, science, and engineering" including by supporting "alliances between institutions with high-quality research programs and those with predominantly minority enrollment." 136 Cong. Rec. S17293 (Oct. 26, 1990).

Despite these statutory mandates, the Change in Priorities Decision makes clear that NSF will no longer fund—or even meaningfully consider applications under—the above programs because their impacts are too "narrow" and "limited to subgroups of people based on protected class or characteristics." Compl. ¶ 175. NSF has therefore unlawfully withheld agency action by "refus[ing] to accept, in any form, a request that it take a required action." *Al Otro Lado*, 138 F.4th at 1122; *Widakuswara v. Lake*, 1:25-cv-01015, 2025 WL 1166400, at *15 (D.D.C. April 22,

2025) (agency "unlawfully withh[eld] … grants that [it] is statutorily required to provide" where the agency made clear that it did not intend "to fulfill [its] statutory mandate"). Plaintiffs have more than adequately pled their claim to compel agency action unlawfully withheld.

**B.      Plaintiffs have stated a claim to set aside Defendant Stone's ultra vires action**

As alleged in the Complaint, "NSF and its Director lacked constitutional, statutory, and regulatory authority to issue or implement the Change in Priorities Decision and the *en masse* termination of the Plaintiffs' and others' grant awards" because "these terminations violate the Constitution's separation of powers as well as the Spending and Appropriations Clauses; deprive Plaintiffs of their procedural due process rights; are void for vagueness; and have no basis in any law or other authority." Compl. ¶ 205. Plaintiffs have thus sufficiently alleged a cause of action for NSF having acted "beyond th[e] limitations" set by federal statute. *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689 (1949).

## CONCLUSION

The Court should grant Plaintiffs' motion for a preliminary injunction, ECF No. 3, and deny NSF's motion to dismiss, ECF No. 15.

July 16, 2025                                      Respectfully submitted,

                                                            ___/s/ Steven Y. Bressler_____
                                                            Steven Y. Bressler (D.C. Bar No. 482492)
                                                            Tsuki Hoshijima
                                                            DEMOCRACY FORWARD FOUNDATION
                                                            P.O. Box 34553
                                                            Washington, D.C. 20043

                                                            Nathan L. Walker (*pro hac vice*)
                                                            Celine Purcell (*pro hac vice*)
                                                            Emily Kirk (*pro hac vice*)
                                                            Heather C. Bates (*pro hac vice* forthcoming)
                                                            THE NORTON LAW FIRM PC
                                                            300 Frank H. Ogawa Plaza, Suite 450
                                                            Oakland, CA 94612