UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN ASSOCIATION OF PHYSICS TEACHERS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL SCIENCE FOUNDATION, et al., <br><br> Defendants. | Civil Action No. 25-1923 (JMC) |

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS AND RESPONSE TO PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY**

# TABLE OF CONTENTS

Table of Contents ................................................................................................................. i

Table of Authorities .............................................................................................................. ii

Argument ............................................................................................................................... 1

    I.    Plaintiffs' Lack Association Standing. .................................................................. 1

    II.   Plaintiffs' APA Claims Fail. ................................................................................. 3

        A.    Plaintiffs APA Claims Are an Impermissible Programmatic Challenge. ... 3

        B.    Plaintiffs' APA Claims Fail Because They Seek Impermissible Money Damages. ................................................................................................... 4

        C.    Funding Decisions Are Committed to Foundation Discretion. ................ 10

        D.    Plaintiffs' Unreasonable Delay Claim Fails (Count III). ......................... 11

    III.   Plaintiffs' Due Process Claims Fail. ................................................................... 13

    IV.   Plaintiffs' Remaining Constitutional Claims Likewise Fail. ............................... 16

Conclusion ........................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Anti-Vivisection Soc'y v. U.S. Dep't of Agric.*,
  946 F.3d 615 (D.C. Cir. 2020) .................................................................. 12

\* *Am. Ass'n of Univ. Profs. v. Dep't of Just.*,
  Civ. A. 2025 WL 1684817 (S.D.N.Y. June 16, 2025) ......................................... 2, 10

*Am. Pub. Health Ass'n v. NIH*,
  --- F.4th ---, 2025 WL 2017106 (1st Cir. July 18, 2025) .................................. 7, 8, 9

\* *Ass'n for Educ. Fin. & Pol'y, Inc. v. McMahon*,
  Civ. A. No. 25-0999 (TNM), 2025 WL 1568301 (D.D.C. June 3, 2025) ................................. 4

\* *Bd. of Educ. for Silver Consol. Schs. v. McMahon*,
  --- F. Supp. 3d ---, 2025 WL 2017177 (D.N.M. July 18, 2025) .................................. 10, 15, 16

*Bowen v. Massachusetts*,
  487 U.S. 879 (1988) ........................................................................ 4

*California v. Dep't of Educ.*,
  132 F.4th 92 (1st Cir. 2025) ................................................................ 11

*Cmty. Legal Servs. in E. Palo Alto v. Dep't of Health & Human Serv.*,
  135 F.4th 852 (9th Cir. 2025) ............................................................... 8

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) .......................................................................... 2

*Crowley Gov't Sevs., Inc. v. GSA*,
  38 F.4th 1099 (D.C. Cir. 2022) ............................................................. 10

*Da Costa v. Immigr. Inv. Program Off.*,
  80 F.4th 330 (D.C. Cir. 2023) .............................................................. 12

\* *Department of Education v. California*,
  145 S. Ct. 966 (2025) ................................................................. passim

*Doe v. Trump*,
  --- F.4th ---, 2025 WL 1833522 (1st Cir. July 3, 2025) ...................................... 1

\* *Great-W. Life & Annuity Ins. Co. v. Knudson*,
  534 U.S. 204 (2002) .................................................................. passim

*Grupo Mexicano de Desarrollo, S. A. v. All. Bond Fund, Inc.*,
   527 U.S. 308 (1999) .................................................................................... 1

*Heckler v. Chaney*,
   470 U.S. 821 (1985) .................................................................................. 10

*Immigrant Defs. L. Ctr. v. Noem*,
   --- F.4th ---, 2025 WL 2017247 (9th Cir. Jul. 2025) ................................ 1

*Massachusetts v. Mellon*,
   262 U.S. 447 (1923) .................................................................................... 2

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
   567 U.S. 209 (2012) .................................................................................. 10

*Megapulse, Inc. v. Lewis*,
   672 F.2d 959 (D.C. Cir. 1982) ................................................................... 9

*Middle E. Broad. Networks, Inc. v. United States*,
   No. 25-5150, 2025 WL 1378735 (D.C. Cir. May 7, 2025) ......................... 9

*Nat'l Endowment for the Arts v. Finley*,
   524 U.S. 569 (1988) .................................................................................. 15

* *Nat'l Urb. League v. Trump*,
   --- F. Supp. 3d ---, 2025 WL 1275613 (D.D.C. May 2, 2025) ................ 15

*NB ex rel. Peacock v. District of Columbia*,
   794 F.3d 31 (D.C. Cir. 2015) ................................................................... 14

*Norton v. Southern Utah Wilderness Alliance*,
   542 U.S. 55 (2004) ........................................................................ 11, 12, 13

*Nuclear Regul. Comm'n v. Texas*,
   145 S. Ct. 1762 (2025) .............................................................................. 16

*Spectrum Leasing Corp. v. United States*,
   764 F.2d 891 (D.C. Cir. 1985) ................................................................... 5

*Suburban Mortg. Assocs. v. Dep't of Hous. & Urb. Dev.*,
   480 F.3d 1116 (Fed. Cir. 2007) ................................................................ 15

*Tapp v. Wash. Metro. Area Transit Auth.*,
   306 F. Supp. 3d 383 (D.D.C. 2016) ......................................................... 13

*Thakur v. Trump*,
   --- F. Supp. 3d, 2025WL 1734471 (N.D. Cal. June 23, 2025)................................................. 11

* *Trump v. CASA*,
   606 U.S. ---, 2025 WL 1773631 (Jun. 27, 2025) ............................................................. 1, 2, 5

*U.S. Capitol Police v. Off. of*,
   *Compl.*, 908 F.3d 748 (Fed. Cir. 2018) ......................................................................... 2

*U.S. Conf. of Cath. Bishops v. Dep't of State*,
   770 F. Supp. 3d 155 (D.D.C. 2025) ............................................................................ 9

*United States v. Miller*,
   145 S. Ct. 839 (2025) ................................................................................................ 9

* *Vera Inst. of Just. v. Dep't of Just.*,
   Civ. A. No. 25-1643 (APM), 2025 WL 1865160 (D.D.C. July 7, 2025) ......................... passim

## Statutes

5 U.S.C. § 702 .................................................................................................... 4, 5, 10

28 U.S.C. 1491(a)(1) ............................................................................................... 7

42 U.S.C. § 1862p-4 ............................................................................................... 4

42 U.S.C. § 19012 .................................................................................................. 4

## Rules

Fed. R. Civ. P. 12(b)(1)............................................................................................ 3

## Regulations

2 C.F.R. § 200.340(a)(4) ..................................................................................... passim

Defendants the National Science Foundation and Brian Stone, Senior Official Performing the Duties of the National Science Foundation (collectively, the "Foundation"), respectfully submit this reply in further support of their motion to dismiss ("Mot. to Dismiss," ECF No. 15).

## ARGUMENT

### I.    <u>Plaintiffs' Lack Association Standing.</u>

Plaintiffs argue that the Supreme Court's decision in *Trump v. CASA*, 606 U.S. ---, 2025 WL 1773631 (Jun. 27, 2025), did not disturb existing D.C. Circuit precedent concerning a court's authority to issue relief to parties not before the Court. *Opp'n* (ECF No. 21) at 2-6. Plaintiffs are wrong. *CASA* arose under the Judiciary Act and the Supreme Court recognized as much. *CASA*, 2025 WL 1773631 at *8 n.10. As the Foundation already asserted, *CASA*'s reasoning applies with equal force in the APA context. Mot. to Dismiss (ECF No. 15) at 10-15. Plaintiffs cite a number of pre-*CASA* decisions and Supreme Court concurring opinions, but do not otherwise engage with *CASA*'s reasoning.

"*CASA* provides fresh guidance regarding the equitable powers of federal courts." *Doe v. Trump*, --- F.4th ---, 2025 WL 1833522, at *2 (1st Cir. July 3, 2025). At its core, *CASA* stands for the proposition that courts lack the authority to issue universal injunctions because such authority "likely exceed[s] the equitable authority that Congress has granted to federal courts." *CASA*, 2025 WL 1773631, at *4. In other words, the Judiciary Act of 1789 granted American courts "only those sorts of equitable remedies 'traditionally accorded by courts of equity' at our country's inception." *Id.* at *6 (quoting *Grupo Mexicano de Desarrollo, S. A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 319 (1999)). "Neither the universal injunction nor any analogous form of relief was available in the High Court of Chancery in England at the time of the founding." *Id.* at *6.

This reasoning easily extends to the Administrative Procedure Act ("APA"). Mot. to Dismiss (ECF No. 15) at 12-13; *see also Immigrant Defs. L. Ctr. v. Noem*, --- F.4th ---, 2025 WL

2017247, at *14 (9th Cir. Jul. 2025) ("Though the Supreme Court's recent *Trump v. CASA, Inc.* decision explicitly declined to extend its holding to the APA context, its complete-relief principle for crafting injunctive relief provides some useful guidance for crafting interim equitable relief in this [APA] case." (citation modified)).  When it was adopted in 1946, the APA codified "the common law standard for review of agency action."  *U.S. Capitol Police v. Off. of Compl.*, 908 F.3d 748, 756 (Fed. Cir. 2018).  Under that common law, a court could disregard an unconstitutional statute to resolve the dispute between the parties before the court, but it did give courts "per se [power] to review and annul acts of Congress on the ground that they are unconstitutional." *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923).  In fact, the first universal injunction did not issue until 1963, long after the adoption of the APA.  *CASA*, 2025 WL 1773631, at *8.  Put simply, modern courts' authority to issue equitable remedies is no greater than that of courts of equity at the founding, and neither at the time of the Judiciary Act nor at the time of the APA did those court have the authority to issue relief to parties not before it.  Plaintiffs do not dispute any of this.  And for good reason.  "Our democracy cannot very well function if individual judges issue extraordinary relief to every plaintiff who clamors to object to executive action." *Am. Ass'n. of Univ. Profs. v. Dep't of Just.*, Civ. A. No. 25-2429, 2025 WL 1684817, at *1 (S.D.N.Y. June 16, 2025).

Nor do Plaintiffs meaningfully dispute that their lawsuit bypasses Rule 23.  The Foundation argued that "Rule 23 is the 'exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'"  Mot. to Dismiss (ECF No. 15) at 14 (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (citation modified)).  Plaintiffs respond only that the Foundation's Rule 23 argument is "meritless because the APA authorizes the relief requested." Opp'n (ECF No. 21) at 6 n.3.  The Court should treat Plaintiffs' failure to respond as Plaintiffs

conceding the point.  And this is a point with consequence.  For the Court to grant the relief Plaintiffs here seek—restoration of all terminated grants—every grantee must be a party to this lawsuit; but they are not and therefore Plaintiffs cannot establish associational standing.  Without associational standing, the Court is without subject-matter jurisdiction and it must dismiss the complaint.  *See* Fed. R. Civ. P. 12(b)(1).

## II.    Plaintiffs' APA Claims Fail.

### A.    Plaintiffs APA Claims Are an Impermissible Programmatic Challenge.

The Foundation first argues that Plaintiffs' lawsuit is an impermissible programmatic challenge.  Mot. to Dismiss (ECF No. 15) at 16.  Plaintiffs respond that their lawsuit is not because it challenges discrete final agency actions.  Opp'n (ECF No. 21) at 6–8.  Plaintiffs argue that the "Change in Priorities Decision" and the "Mass Termination Action" each was a "discrete final action."  *Id*. at 6, 7.

But in their complaint, Plaintiffs assert a "congressional mandate is to expand the participation of underrepresented persons in STEM fields" and that "Congress expressly mandated by law that the Foundation makes certain grants available.  Compl. (ECF No. 2-1) ¶ 4; *see also id*. ¶¶ 32-42.  According to them, the Foundation "is now violating these clear statutory commands."  *Id*. ¶ 6.  They allege that the Foundation's "'change in priorities' decision and the resulting mass termination of grants and freeze of new awards threaten American innovation, scientific leadership, and economic strength" and "our national security and global competitiveness."  *Id*. ¶ 12.  Plaintiffs' objective in this lawsuit is inconspicuous: they ask "this Court to order [the Foundation] to fulfill its statutory obligations."  *Id*. ¶ 14.  But, as the Foundation explained, addressing these types of claims requires the Court to supervise the day-to-day Foundation operations.  Mot. to Dismiss (ECF No. 15) at 17–18.

For example, Plaintiffs allege that Congress has specifically mandated the Foundation "fund certain programs."  Compl. (ECF No. 2-1) ¶¶ 38, 174.  They allege that the Foundation has "frozen all new awards" and the Foundation therefore "will no longer fund the very activities that Congress requires it to fund[.]"  *Id.* ¶ 175.  Plaintiffs, in effect, ask the Court to "breathe life back into wide swathes" of the Foundation's grantmaking and to "monitor the agency's day-to-day statutory compliance[,]" relief that is unavailable under the APA.  *Ass'n for Educ. Fin. & Pol'y, Inc. v. McMahon*, Civ. A. No. 25-0999 (TNM), 2025 WL 1568301, at *1 (D.D.C. June 3, 2025).  In fact, the Foundation continues to fund many of the programs Plaintiffs allege have been discontinued: as of July 21, 2025, for example, the Foundation "estimates it has over 300 active awards supporting three statutory grant programs authorized under the Act: the Louis Stokes Alliances for Minority Participation Program and the Historically Black Colleges and Universities Undergraduate Program (42 U.S.C. § 1862p-4); and the Eddie Bernice Johnson INCLUDES Initiative (42 U.S.C. § 19012)."  Ex. 1, Declaration of Jason Bossie ("Bossie Decl.") ¶ 6 (attached hereto).

### B.  Plaintiffs' APA Claims Fail Because They Seek Impermissible Money Damages.

The Foundation argues that Plaintiffs' lawsuit is foreclosed by § 702 because Plaintiffs seek money damages.  Specifically, the Foundation argues that *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002), as applied by *Department of Education v. California*, 145 S. Ct. 966 (2025), foreclose Plaintiffs' reliance on *Bowen v. Massachusetts*, 487 U.S. 879 (1988).  Mot. to Dismiss (ECF No. 15) at 19–24.

As an initial matter, Plaintiffs' concession that "the eventual likely result of vacating unlawful grant terminations would be disbursement of money," Opp'n (ECF No. 21) at 9, is fatal to their claims.  The APA does not permit suits for "money damages."  5 U.S.C. § 702.  Plaintiffs

here "seek[] an injunction requiring the government to pay monies owed" pursuant to the terminated grants. *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 894 (D.C. Cir. 1985). Plaintiffs seek "to compel the defendant to pay a sum of money," which is an impermissible "money damages" claim. *Knudson*, 534 U.S. at 210. Plaintiffs continued reliance on *Bowen* to argue that they do not seek impermissible money damages is misplaced. As the Foundation explained, the parts of *Bowen* on which Plaintiffs rely are no longer good law. Mot. to Dismiss (ECF No. 15) at 19–24.

Plaintiffs counter that *Knudson* is inapplicable because it did not "purport to interpret the meaning of 'money damages' in 5 U.S.C. § 702." Opp'n (ECF No. 21). But the Supreme Court in *California* applied *Knudson* to state that "the APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money[.]'" *California*, 145 S. Ct. at 968. Critically, *California* arose from a temporary restraining order "enjoining the Government from terminating various education-related grants" and requiring "the Government to pay out past-due grant obligations and to continue paying obligations as they accrue." *Id*. That is precisely the type of money payments Plaintiffs concede will result from granting the relief Plaintiffs here seek. The Supreme "Court has spoken in a case substantially the same as this one" and "this Court must listen." *Vera Inst. of Just. v. Dep't of Just.*, Civ. A. No. 25-1643 (APM), 2025 WL 1865160, at *11 (D.D.C. July 7, 2025); *cf. CASA*, 2025 WL 1773631, at *22 (Kavanaugh, J., concurring ("[W]hen this Court makes a decision on the interim legal status of a major new federal statute or executive action—that decision will often constitute a form of precedent (*de jure or de facto*) that provides guidance throughout the United States during the years-long interim period until a final decision on the merits.").

Plaintiffs argue that *California* could not have overruled *Bowen* because *California* was not a decision on the merits. Plaintiffs misconstrue the Foundation's argument. The Foundation does not argue that *California* overruled *Bowen*; the Foundation argues that, after *Knudson*, the part of *Bowen* on which Plaintiffs rely is no longer good law. Mot. to Dismiss (ECF No. 15) at 21. *Knudson* was a decision on the merits following full briefing and oral argument. Justice Scalia delivered the opinion of the Supreme Court, citing extensively to his own dissent in *Bowen*. *Knudson*, 534 U.S. at 211-12. *California* applied the *Knudson* principle in an APA case seeking the restoration of federal grants—the exact circumstances here. To the extent Plaintiffs seek to separately distinguish *Knudson* and *California*, Opp'n (ECF No. 21) at 10–11, Plaintiffs miss the mark. The two cases work together. *California* is the application of the *Knudson* principle to an APA case challenging grant terminations.

Plaintiffs do not even attempt to rebut the Foundation's argument. Plaintiffs in passing assert that *Knudson* is limited to requests for payment of accrued liabilities resulting from a breach of a legal duty, or what Plaintiffs term "compensatory damages." Opp'n (ECF No. 21). Plaintiffs' reading cannot be squared with *Knudson*'s formulation of *Bowen*: *Knudson* explained that the APA waived sovereign immunity in *Bowen* not because the plaintiff sought specific rather than substitute monetary relief, but because the plaintiff sought prospective injunctive relief separate and apart from the sums of money it sought to compel the government to pay. *Knudson*, 534 U.S. at 212. As the Foundation explained in its motion to dismiss, "[o]ne can debate whether that is the fairest reading of *Bowen* on its own terms, but that is immaterial; what matters is that it is what *Knudson* said *Bowen* now means." Mot. to Dismiss (ECF No. 15) at 23.

Plaintiffs' reading also cannot be squared with *California*, which involved grant terminations much similar to the terminations at issue here. *California*, 145 S. Ct. at 968. There,

as here, the Foundation conducted a comprehensive internal review determined that the terminated grants are contrary to program goals or agency priorities—an authority Plaintiffs do not dispute is incorporated by reference into the grant contract. 2 C.F.R. § 200.340(a)(4). There, as here, grantees sued, alleging that the grant terminations were arbitrary and capricious in violation of the APA. There, as here, the plaintiffs seek review invoking federal statutes and regulations and did not style their action as one for money damages. In *California*, the Supreme Court issued a stay. 145 S. Ct. at 968. As the Court explained, the district court "enjoin[ed] the Government from terminating various education-related grants" and "require[d] the Government to pay out past-due grant obligations and to continue paying grant obligations as they accrue." *Id*. But the district court likely lacked jurisdiction because the APA's waiver of sovereign immunity "does not extend to orders 'to enforce a contractual obligation to pay money' along the lines of what the District Court ordered." *Id*. (quoting *Knudson*, 534 U.S. at 212). Instead, such suits must be brought in the Court of Federal Claims, in which Congress vested "jurisdiction over suits based on 'any express or implied contract with the United States.'" *Id*. (quoting 28 U.S.C. 1491(a)(1)).

Apparently recognizing the flaws in their argument, Plaintiffs draw this Court's attention to a recent First Circuit decision. Notice of Recent Authority (ECF No. 24) (citing *Am. Pub. Health Ass'n v. NIH*, --- F.4th ---, 2025 WL 2017106 (1st Cir. July 18, 2025)). The First Circuit found that the district court had jurisdiction over an APA challenge of "a new policy that prohibits NIH from funding scientific research grants in certain categories." *Am. Pub. Health Ass'n*, 2025 WL 2017106, at *1. The First Circuit did so because the district court provided "declaratory relief that is well within the scope of the APA" and "neither the district court's orders nor the plaintiffs' claims in this case are premised upon the individual terms of the grant agreements." *Id*. at *6, 7.

The First Circuit therefore did not consider the claims to be contractual, placing them outside of the Tucker Act. *Id*. at *4, 8. The Foundation respectfully disagrees with the First Circuit's opinion.

In reaching its conclusion, the First Circuit attempted to distinguish *California* by describing *California* as addressing only an order "to pay out past-due grant obligations." *Id*. at *7. In fact, the order in *California* "require[d] the Government to pay out past-due grant obligations and to continue paying obligations as they accrue." *California*, 145 S. Ct. at 968. That forward- and backward-looking relief is identical to the relief Plaintiffs here seek, which effectively asks for the restoration of terminated grants and disbursement of federal funds. Compl. (ECF No. 2-1) at 58–59; *cf. Cmty. Legal Servs. in E. Palo Alto v. Dep't of Health & Human Serv.*, 135 F.4th 852, 855 (9th Cir. 2025) (Bumatay & VanDyke, JJ., dissenting from the denial of rehearing en banc) ("[*California*] cannot be distinguished on the ground that the Plaintiffs here instead seek forward-looking injunctive relief . . . rather than monetary relief for past-due contractual breaches.").

The First Circuit also cast the claims in *California* as "depend[ing] on the terms and conditions of the grant awards," while the district court in *American Public Health Association* supposedly "neither examined any of the plaintiffs' grant terms nor interpreted them in reaching its ruling." *Am. Pub. Health Ass'n*., 2025 WL 2017106, at *7, 8. But the claims in *California* depended on the grant contracts in the exact same way as the claims in the case before the First Circuit and the claims before the Court in this case: The ultimate source of the asserted right to payment is each individual grant award, not the grantmaking statutes or grant-termination regulations that Plaintiffs claim the government violated. Plaintiffs do not argue that the relevant regulatory language authorizing termination for grants that "no longer effectuate[] the program goals or agency priorities," 2 C.F.R. § 200.340(a)(4), is not incorporated into their grants. In that

vein, the First Circuit failed to even acknowledge § 200.340.  *See generally Am. Pub. Health Ass'n*, 2025 WL 2017106.

The First Circuit also analogized the case before it to *Bowen*, asserting that the plaintiffs there, like the plaintiff in *Bowen*, simply seek "declaratory relief that is well within the scope of the APA."  *Id*. at * 8.  But the same was true in *California*: The plaintiffs "sought declaratory and injunctive relief to set aside the termination of the previously awarded grants."  145 S. Ct. at 971 (Jackson, J., dissenting).  Regardless, the critical difference in *Bowen* was the plaintiff in that case had no contractual claim to payment; the plaintiff did not seek to enforce contractual rights and the suit could not have been impliedly precluded by the Tucker Act.  *Knudson*, 534 U.S. at 212; *see Middle E. Broad. Networks, Inc. v. United States*, No. 25-5150, 2025 WL 1378735, at *3 (D.C. Cir. May 7, 2025) (en banc) (Katsas, J., dissenting).  If Plaintiffs could evade the Tucker Act just by requesting declaratory relief, virtually any contract suit could be transmuted into an APA or constitutional claim.  Mot. to Dismiss (ECF No. 15) at 35-36.  "It is hard to conceive of a claim falling no matter how squarely within the Tucker Act which could not be urged to involve as well agency error subject to review under the APA."  *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967 n.34 (D.C. Cir. 1982) (citation modified).  "Sure, the [Plaintiffs] seek[] to set aside agency action.  But the agency action that [they] ask[] the Court to reverse is the Government's decision to cease a financial relationship with [them].  This is not standard injunctive fare."  *U.S. Conf. of Cath. Bishops v. Dep't of State*, 770 F. Supp. 3d 155, 165 (D.D.C. 2025).

*California* reflects black-letter jurisdictional principles.  Given the federal government's sovereign immunity, federal courts generally lack jurisdiction over "suits against the United States absent Congress's express consent."  *United States v. Miller*, 145 S. Ct. 839, 849 (2025).  The APA provides a limited waiver of sovereign immunity for claims "seeking relief other than money

damages." 5 U.S.C. § 702. But the APA's waiver "comes with an important carve-out": It does not apply "'if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.'" *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012) (quoting 5 U.S.C. § 702). "In all events, the principal relief Plaintiffs seek is money,'" an unavailable remedy under the APA. *Am. Ass'n of Univ. Profs.*, 2025 WL 1684817, at *14; *see also Bd. of Educ. for Silver Consol. Schs. v. McMahon*, --- F. Supp. 3d ---, 2025 WL 2017177, at *7 (D.N.M. Jul. 18, 2025) (finding that review of grant termination unavailable under the APA); *Vera Inst. of Just.*, 2025 WL 1865160, at *14 (same). And the D.C. Circuit "prohibits . . . the creative drafting of complaints" like Plaintiffs' attempt here, which disguises their "claim for money damages as one for equitable relief[.]" *Crowley Gov't Sevs., Inc. v. GSA*, 38 F.4th 1099, 1107 (D.C. Cir. 2022). Put simply, the Court lacks jurisdiction to hear Plaintiffs' APA claims.

### C.    Funding Decisions Are Committed to Foundation Discretion.

The Foundation argues that that grantmaking is committed to Foundation discretion. Mot. to Dismiss (ECF No. 15) at 24–26. Plaintiffs counter that termination decisions are not committed to Foundation decisions but do not appear to contest that grantmaking is committed to Foundation discretion. Opp'n (ECF No. 21) 11–13.

Plaintiffs also do not appear to contest that an action is committed to agency discretion when a "statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). Plaintiffs moreover concede that federal regulations permit the Foundation to terminate grants consistent with "Office of Management and Budget's Uniform Administrative Requirements." Compl. (ECF No. 2-1) ¶ 50 (citing 2 C.F.R. §§ 200.340, 2500.100). They allege that the grants at issue in this case were terminated pursuant to those regulations. *Id*. ¶ 200 (citing 2 C.F.R. § 200.340(a)(4)). Federal regulations provide that an award may be terminated "if an award no longer effectuates

the program goals or agency priorities."  2 C.F.R. § 200.340(a)(4).  Critically, Plaintiffs do not identify what law the Court ought to apply if it were to review the terminations.  *See* Opp'n (ECF No. 21) at 11–13.  These concessions and omissions are fatal to their claim.

Plaintiffs instead rely on an out-of-circuit district court decision to argue that grant terminations are reviewable, that they are arbitrary and capricious, and that they are contrary to law.  Opp'n (ECF No. 21) at 12–14 (citing *Thakur v. Trump*, --- F. Supp. 3d, 2025 WL 1734471 (N.D. Cal. June 23, 2025)).  Much of the *Thakur* opinion cannot be squared with Supreme Court precedent.  For example, in finding that meaningful standards exist to review the grant terminations, the *Thakur* court relied on the First Circuit decision in *California v. Dep't of Educ.*, 132 F.4th 92, 97 (1st Cir. 2025).  It was that First Circuit decision that led to the Supreme Court decision in *California*, which held, citing *Knudson*, that "the APA's limited waiver of immunity does not extend to orders "to enforce a contractual obligation to pay money" along the lines of what the District Court ordered here."  *California*, 145 S. Ct. at 968.  *Thakur* also relied exclusively on *Bowen* to find that restoration of a terminated grant is not a suit for "money damages." *Thakur*, 2025 WL 1734471, at *20-21.  But *Thakur* made no reference to *Knudson* or otherwise engaged with the interplay among *Bowen*, *Knudson*, and *California*.  *Id*.  The Court should decline Plaintiffs' invitation to rely on caselaw that did not consider issues presented to this Court or with whose logic the Supreme Court has squarely disagreed.

### D.    Plaintiffs' Unreasonable Delay Claim Fails (Count III).

The Foundation argues that Count III, alleging an unreasonable delay in adjudicating unspecified award applications, fails.  Mot. to Dismiss (ECF No. 15) at 26–32.  Plaintiffs clarify that their claim actually is that the Foundation "is withholding actions it is legally required to take." Opp'n (ECF No. 21) at 21 n.10.  Plaintiffs rely on *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004).  *See* Opp'n (ECF No. 21) at 21-22; Compl. (ECF No. 2-1) ¶ 173.

"To state a claim for unreasonable delay, Plaintiffs must first allege that the agency failed to take a discrete agency action that it is required to take, and, second, that the delay was unreasonable." *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023) (citing *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) and *Am. Anti-Vivisection Soc'y v. U.S. Dep't of Agric.*, 946 F.3d 615, 621 (D.C. Cir. 2020) (citation modified). Since Plaintiffs disavow alleging an unreasonable delay, Opp'n (ECF No. 21) at 21, any claim that the Foundation has not timely adjudicated specific grant applications fails. *See* Compl. (ECF No. 2-1) ¶¶ 171–75.

To the extent Plaintiffs seek broadly to compel funding to specific programs rather than adjudication of specific grant applications, "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." *S. Utah*, 542 U.S. at 64 (citation modified). Broad, programmatic attacks, however, are not available. *Id.*

As the Foundation explained, Plaintiffs have not identified a clear, nondiscretionary duty requiring the Foundation to make specific awards. Mot. to Dismiss (ECF No. 15) at 26–27. Plaintiffs respond by regurgitating their conclusory allegations that the Foundation has discontinued funding to specific programs. Opp'n (ECF No. 21) at 22–23. Even if the Foundation has a statutory duty to fund those programs, Plaintiffs rest entirely on a single, conclusory allegation that the Foundation "has forbidden new funding to colleges, universities, and other higher education institutions." *Id.* at 23 (citing Compl. (ECF No. 2-1) ¶ 140). Plaintiffs concede that Foundation "staff purported to allow for some new funding" but allege that it "kept in place a freeze on new funding to all institutions of higher education." Compl. (ECF No. 2-1) ¶ 140. Notably, the allegation rests entirely on a citation to a New York Times article, which includes a statement from a Foundation spokesman, stating that the Foundation is "still 'making awards to

higher education institutions.'"  Aatish Bhatia, et al., *Trump Has Cut Science Funding to Its Lowest Level in Decades*, N.Y. TIMES (May 22, 2025), https://www.nytimes.com/interactive/2025/05/22/upshot/nsf-grantstrump-cuts.html (last visited July 22, 2025).  The Foundation still continues to make awards and funds grants in many of the programs Plaintiffs allege are no longer being funded.  Ex. 1, Bossie Decl. ¶ 6.  Plaintiffs certainly allege that Congress mandates funding to the Historically Black Colleges and Universities Undergraduate Program, Compl. (ECF No. 2-1) ¶ 38, that the Foundation "froze all new awards, first across the board and then to institutions of higher education," *id*. ¶ 175, and that the Foundation is "still ordering staff to halt all grants to colleges, universities, and other institutions of higher education," *id*. ¶ 11.  But their bare recitals are insufficient to state a claim, and in any event, the Foundation "awarded five grants through the Historically Black Colleges and Universities Undergraduate Program in June/July 2025."  Ex. 1, Bossie Decl. ¶ 7.

Ultimately Plaintiffs' claim fails because they do not allege that that law requires the Foundation to make any specific grant to any specific program within any prescribed period.  "Thus, when an agency is compelled by law to act within a certain time period, but the manner of its action is left to the agency's discretion, a court can compel the agency to act, but has no power to specify what the action must be."  *S. Utah*, 542 U.S. at 65.  In short, Plaintiffs' APA claims fail.

### III.     **Plaintiffs' Due Process Claims Fail.**

"In order to establish a Fifth Amendment due process violation, a plaintiff must demonstrate (1) that he was deprived of protected property or liberty interests; and (2) that, in effecting that deprivation, the defendant did not afford him the procedural safeguards guaranteed by the Constitution."  *Tapp v. Wash. Metro. Area Transit Auth.*, 306 F. Supp. 3d 383, 392 (D.D.C. 2016) (citation modified).  The Foundation explained that Plaintiffs have not identified a protected property interest.  Mot. to Dismiss (ECF No.15) at 34–36.  Plaintiffs respond that a protected

property interest exists because "the 'implementing regulations place substantial limitation on official discretion to withhold award of the benefit upon satisfaction of the eligibility criteria.'" Opp'n (ECF No. 21) at 16 (quoting *NB ex rel. Peacock v. District of Columbia*, 794 F.3d 31, 41 n.15 (D.C. Cir. 2015)).[1]  Plaintiffs argue that federal regulations limit the Foundation's discretion to terminate awards, which therefore, creates a property interest.  *Id*. at 16.  Not so.

The D.C. Circuit in *NB ex rel. Peacock* found a property interest in Medicaid drug reimbursement where the District of Columbia's Medicaid regulations "use mandatory, non-discretionary terms."  *NB ex rel. Peacock*, 794 F.3d at 42.  The D.C. Circuit specifically pointed to language in the regulations using "shall" and the defendant's failure in that case to argue that the District of Columbia retained any discretion "upon the satisfaction of all eligibility criteria." *Id*.  Contrary to Plaintiffs' claims here, federal regulations leave to the Foundation broad discretion to make and terminate grants.  The Foundation may terminate grants "if the recipient or subrecipient fails to comply with the terms and conditions of the Federal award," if the Foundation "determines that the remaining portion of the Federal award will not accomplish the purposes for which the Federal award was made," or "if an award no longer effectuates the program goals or agency priorities."  2 C.F.R § 200.340(a)(1), (2), (4).  "The regulation's text is thus permissive; it does not contain 'explicitly mandatory language' that dictates an outcome if 'substantive predicates are present.'"  *Vera Inst. of Just.*, 2025 WL 1865160, at *15.

Plaintiffs in passing insist that the grants are not contracts because awardees have not provided a consideration conferring some tangible and direct benefit to on the government.  Opp'n

---

[1]      Plaintiffs cite to footnote 15 on page 41 of *NB ex rel. Peacock*.  Opp'n (ECF No. 21) at 16. That opinion contains no footnotes.  It appears, rather, that the quoted language comes from headnote 15 of that case.  Regardless, the quoted language also substantially appears in the body of the opinion, at pages 41 to 42.

(ECF No. 21) at 16 n.8.  "Plaintiffs' due process claim 'is substantively indistinguishable from a breach of contract claim'" because any restriction on Foundation's ability to terminate grants is in "the grant agreements themselves, not § 200.340(a)."  *Vera Inst. of Just.*, 2025 WL 1865160, at *15 (quoting *Suburban Mortg. Assocs. v. Dep't of Hous. & Urb. Dev.*, 480 F.3d 1116, 1128 (Fed. Cir. 2007)).  Other courts in this Circuit facing substantially similar claims agree.  *See Bd. of Educ.*, 2025 WL 2017177, at *9; *Nat'l Urb. League v. Trump*, --- F. Supp. 3d ----, 2025 WL 1275613, at *18 (D.D.C. May 2, 2025).  Put simply, there is "no property interest in a grant termination case because 'Plaintiffs offered no reason to think their contracts and grants . . . are different from the 'millions of government contracts in effect at any point in time' to which courts seldom apply 'due-process principles.'"  *Vera Inst. of Just.*, 2025 WL 1865160, at *16 (quoting *Nat'l Urb. League*, 2025 WL 1275613, at *18).

The Foundation also argued that Plaintiffs' Due Process challenge is precluded because the Supreme Court has rejected the application of the demanding "void-for-vagueness" standard to government funding decisions.  Mot. to Dismiss (ECF No. 15) at 36–37 (citing *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 588–89 (1988)).  Plaintiffs counter that *Finley* did not foreclose such possibility.  Opp'n (ECF No. 21) at 17–18.  "Any concerns of vagueness regarding exactly what authority an agency may have to terminate a grant are internal considerations for the agency itself."  *Bd. of Educ.*, 2025 WL 2017177, at *9.  Terminating a grant because it no longer effectuates "the program goals or agency priorities," 2 C.F.R. § 200.340, "is not any vaguer than awarding scholarship and grants on the basis of subject criteria such as 'excellence,' which the Supreme Court allowed in *Finley*."  *Bd. of Educ.*, 2025 WL 2017177, at *9 (citation modified).  Plaintiffs' Due Process claims fail.

**IV.     Plaintiffs' Remaining Constitutional Claims Likewise Fail.**

The Foundation argued that Plaintiffs' separation of powers claim is barred because it is purely statutory.  Mot. to Dismiss (ECF No. 15) at 33.  Plaintiffs respond that they have sufficiently established a mandatory duty to fund specific programs that the Foundation now refuses to fulfil.  Opp'n (ECF No. 21) at 14–15.

"Plaintiffs must plead some facts that plausibly establish that [the Foundation] will not reissue the awards to new grantees or that they will do so in a way inconsistent with the appropriations statutes."  *Vera Inst. of Just.*, 2025 WL 1865160, at *17.  Plaintiffs concede that any terminations were the result of the Foundation's "review of its award portfolio" and that that the Foundation continues to make grants.  Compl. (ECF No. 2-1) ¶¶ 69, 140.  The funding for statutorily required programs likewise continues.  Ex. 1, Bossie Decl. ¶¶ 6–7.  Plaintiffs have failed to plead sufficient facts to establish a separation of powers claim.

The Foundation also argued that Plaintiffs' *ultra vires* claim fails because that claim is indistinguishable from Plaintiffs' APA claims.  Mot. to Dismiss (ECF No. 15) at 37–38.  In an apparent concession, Plaintiffs half-heartedly respond by summarizing their various other constitutional and statutory claims.  Opp'n (ECF No. 21) at 25.  "[U]ltra vires review is unavailable where a statutory review scheme provides aggrieved persons with an adequate opportunity for judicial review."  *Nuclear Regul. Comm'n v. Texas*, 145 S. Ct. 1762, 1776 (2025).  "The Tucker Act provides such an opportunity."  *Bd. of Educ.*, 2025 WL 2017177, at *11; *see also California*, 145 S. Ct. at 968 ("Instead, the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on 'any express or implied contract with the United States.'" (quoting 28 U.S.C. § 1491(a)(1))).  Plaintiffs' *ultra vires* claim fails.

*     *     *

**CONCLUSION**

For these reasons, and the reasons articulated in the Foundation's motion to dismiss (ECF No. 15), the Foundation respectfully requests that the Court grant the Foundation's motion to dismiss, dismiss this case in its entirety, and deny Plaintiffs' motion for a preliminary injunction (ECF No. 3) as moot.

Dated: Jul. 25, 2025                Respectfully submitted,

                                    JEANINE FERRIS PIRRO
                                    United States Attorney

                                    By:        */s/ Dimitar P. Georgiev*
                                        DIMITAR P. GEORGIEV, D.C. Bar # 1735756
                                        Assistant United States Attorney
                                        601 D Street, NW
                                        Washington, DC 20530
                                        (202) 252-2500 (main)

                                    *Attorneys for the United States of America*