UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN ASSOCIATION OF PHYSICS TEACHERS, INC., et al.,

Plaintiffs,

v.

NATIONAL SCIENCE FOUNDATION, et al.,

Defendants.

Civil Action No. 25-1923 (JMC)

**DEFENDANTS' COMBINED MOTION TO STRIKE, OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, CROSS-MOTION FOR SUMMARY JUDGMENT, AND MEMORANDUM IN SUPPORT THEREOF**

## TABLE OF CONTENTS

Table of Contents ........ i

Table of Authorities ........ ii

Introduction ........ 1

Background ........ 2

I. The National Science Foundation. ........ 3

II. Executive Orders Promoting Equal Treatment for All and Merit-Based Research. 4

III. Congressional Criticism of the Foundation's Programs. ........ 5

IV. The Foundation's Statement of Priorities. ........ 6

Legal Standards ........ 8

Argument ........ 10

I. The Court Should Strike Plaintiffs' Declarations. ........ 10

II. Plaintiffs' Claims Fail at the Threshold. ........ 13

A. Plaintiffs Lack Standing to Challenge the Statement of Priorities. ........ 13

B. Plaintiffs' Claims Are an Impermissible Programmatic Challenge. ........ 17

C. Congress Committed Grant Administration to Agency Discretion. ........ 19

III. Plaintiffs' Claims Fail on the Merits. ........ 21

A. Arbitrary and Capricious ........ 21

B. Contrary to Law ........ 24

Conclusion ........ 26

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abigail All. for Better Access to Dev. Drugs v. Eschenbach*,
469 F.3d 129 (D.C. Cir. 2006) ........ 15, 16

*Air Excursions v. Yellen*,
66 F.4th 272 (D.C. Cir. 2023) ........ 17

*Am. Ass'n of Physics Teachers, Inc. v. Nat'l Science Found.*,
804 F. Supp. 3d 45 (D.D.C. 2025) ........ 14, 15, 22

*Am. Bioscience, Inc. v. Thompson*,
243 F.3d 579 (D.C. Cir. 2001) ........ 10

*Am. Bioscience, Inc. v. Thompson*,
269 F.3d 1077 (D.C. Cir. 2001) ........ 8

*Am. Petro. Inst. v.Dep't of Interior,*
*81 F*.4th 1048 (10th Cir. 2023) ........ 22

*Am. Wildlands v. Kempthorne*,
530 F.3d 991 (D.C. Cir. 2008) ........ 11

*N. Am.'s Bldg. Trades Unions v. Dep't of Def.*,
783 F. Supp. 3d 290 (D.D.C. 2025) ........ 24

*Amfac Resorts, L.L.C. v. Dep't of Interior*,
143 F. Supp. 2d 7 (D.D.C. 2001) ........ 10

*Amica Center of Immigrant Rts v. EOIR*,
822 F. Supp. 3d 119 (D.D.C. 2026) ........ 16

*Army Corps of Engineers v. Hawkes Co.*,
578 U.S. 590 (2016) ........ 20

*Ass'n for Ed. Fin. & Policy, Inc. v.McMahon*,
786 F. Supp. 3d 13 (D.D.C. 2025) ........ 19, 24

*Balt. Gas & Elec. Co. v. Nat. Res. Def. Council*,
462 U.S. 87 (1983) ........ 9

*Bloch v. Powell*,
227 F. Supp. 2d 25 (D.D.C. 2002) ........ 8

*Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*,
419 U.S. 281 (1974) ........ 9, 21

*Building & Const. Trades Dept., AFL-CIO v. Allbaugh*,
295 F.3d 28 (D.C. Cir. 2002) ........ 21

*Calixto v. Walsh*, Civ. A. No. 19-1853 (CKK),
2022 WL 4446383 (D.D.C. Sep. 23, 2022) ........ 23

*Camp v. Pitts*,
411 U.S. 138 (1973) ........ 10, 11

*Centro de Trabajadores Unidos v. Bessent*,
167 F.4th 1218 (D.C. Cir. 2026) ........ 15

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
401 U.S. 402 (1971) ........ 8, 9, 10, 11

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ........ 14

*Coalition for Humane Immigrant Rts. v. Dep't of Homeland Sec.*,
780 F. Supp. 3d 79 (D.D.C. 2025) ........ 16

*Cobell v. Kempthorne*,
455 F.3d 301 (2006) ........ 17, 18

*Consolo v. Fed. Maritime Comm.*,
383 U.S. 607 (1966) ........ 9

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
591 U.S. 1 (2020) ........ 23

*Dickson v. Sec'y of Def.*,
68 F.3d 1396 (D.C. Cir. 1995) ........ 9

*Dist. Hosp. Partners, L.P. v. Burwell*,
786 F.3d 46 (D.C. Cir. 2015) ........ 11

*Edison Elec. Inst. v. OSHA*,
849 F.2d 611 (D.C. Cir. 1988) ........ 10

*Env't Def. Fund, Inc. v. Costle*,
657 F.2d 275 (D.C. Cir. 1981) ........ 10

*FCC v. Fox Television Stations, Inc.*,
556 U.S. 502 (2009) ........ 24

*FCC v. Prometheus Radio Project*,
592 U.S. 414 (2021) ........ 21

*Fla. Power & Light Co. v. Lorion*,
470 U.S. 729 (1985) ........ 10, 11

*Food & Drug Admin. v. All. for Hippocratic Med.*,
602 U.S. 367 (2024) ........ 13, 16

*Global Health Council v. Trump*,
153 F.4th 1 (D.C. Cir. 2025) ........ 15

*Havens Realty Corp. v. Coleman,*
455 U.S. 363 (1982) ........ 16

*Havens v. Mabus*,
146 F. Supp. 3d 202 (D.D.C. 2015) ........ 8

*Heckler v. Chaney*,
470 U.S. 821 (1985) ........ 20

*Hill Dermaceuticals, Inc. v. Food & Drug Admin.*,
709 F.3d 44 (D.C. Cir. 2013) ........ 11

*Hi-Tech Pharmacal Co. v. FDA*,
587 F. Supp. 2d 13 (D. D.C. 2008) ........ 9

*Holbrook v. Tenn. Valley Auth*.,
48 F.4th 282 (4th Cir. 2022) ........ 20

*Indep. Equip. Dealers Ass'n v. EPA*,
372 F.3d 420 (D.C. Cir. 2004) ........ 18

*Stand Up for Cal.! v. Dep't of Interior,*
*315* F. Supp. 3d 289 (D.D.C. 2018) ........ 10

*Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*,
101 F.3d 145 (D.C. Cir. 1996) ........ 16

*Lincoln v. Vigil*,
508 U.S. 182 (1993) ........ 19

*Lujan v. Nat'l Wildlife Fed.*,
497 U.S. 871 (1990) ........ 15, 18, 19, 24

*Lujan v. Defs. for Wildlife*,
504 U.S. 555 (1992) ........ 13, 16

*Marshall Cnty. Health Care Auth. v. Shalala*,
988 F.2d 1221 (D.C. Cir. 1993) ........ 8

*Milk Train, Inc. v. Veneman*,
310 F.3d 747 (D.C. Cir. 2002) ........ 20

*Miller v. Lehman*,
801 F.2d 492 (D.C. Cir. 1986) ........ 9

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) ........ 9, 21, 23

*Mullin v. Doe*,
146 S. Ct. 2121 (2026) ........ 20

*Murthy v. Missouri*,
603 U.S. 43 (2024) ........ 13, 14

*Nat'l Org. of Veterans' Advocs., Inc. v. Sec'y of Veterans Affs.*,
927 F.3d 1263 (Fed. Cir. 2019) ........ 22

*Nat'l Taxpayers Union, Inc. v. United States*,
68 F.3d 1428 (D.C. Cir. 1995) ........ 16

*New York v. Nat'l Science Found.*,
793 F. Supp. 3d 562 (D.D.C. 2025) ........ 25, 26

*Norton v. S. Utah Wilderness All.*,
542 U.S. 55 (2004) ........ 18, 19, 24

*Occidental Eng'g Co. v. INS*,
753 F.2d 766 (9th Cir. 1985) ........ 8

*Pacific Shores Subdivision, Ca. Water Dist. v. Army Corps. of Engineers*,
448 F. Supp. 2d 1 (D.D.C. 2006) ........ 12

*Raines v. Byrd*,
521 U.S. 811 (1997) ........ 13

*Rempfer v. Sharfstein*,
583 F.3d 860 (D.C. Cir. 2009) ........ 8

*Richards v. INS*,
554 F.2d 1173 (D.C. Cir. 1977) ........ 8

*Swanson Group Mfg. LLC v. Jewell*,
790 F.3d 235 (D.C. Cir. 2015) ........ 14

*Theodore Roosevelt Conservation P'ship v. Salazar*,
616 F.3d 497 (D.C. Cir. 2010) ........ 11

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........ 14

*Vill. of Bald Head Island v. U.S. Army Corps. of Eng'rs*,
714 F.3d 186 (4th Cir. 2013) ........ 18

*Webster v. Doe*,
486 U.S. 592 (1988) ........ 20

**Statutes**

5 U.S.C. § 701(a)(2) ........ 19

5 U.S.C. § 706 ........ 10

5 U.S.C. § 706(2)(A) ........ 8

42 U.S.C. 1862s ........ 26

42 U.S.C. § 1862p-14(a)(7) ........ 25

42 U.S.C. § 1870(c) ........ 20

42 U.S.C. §§ 1862(a)(1) ........ 3

42 USC 1862p-14(a) ........ 25

## INTRODUCTION

Defendants respectfully submit this opposition to Plaintiffs motion for summary judgment ("Pls.' Mot.," Dkt. 43). Contemporaneously, Defendants cross move for summary judgment and to strike the declarations appended to Plaintiffs' motion (Dkts. 43-3 through 43-12).[1]

The National Science Foundation (the "Foundation" or "NSF") in April 2025 revised its priorities to align them with Presidential policy direction, while remaining consistent with its authorizing statute (the "Statement of Priorities"). Contemporaneously the Foundation undertook a review of its grant portfolio and canceled grants that no longer furthered the Foundation's priorities. Fundamentally disagreeing with that policy change, six organizations sued, bringing various statutory and constitutional claims to the grant terminations and the Statement of Priorities. What remains of Plaintiffs' case are two APA claims asserting that the Statement of Priorities is (1) arbitrary and capricious, and (2) contrary to law.

Both claims fail on the merits. *First*, the Foundation's Statement of Priorities is not arbitrary or capricious because the administrative record clearly established that it implements clear Presidential policy direction. *Second*, the Statement of Priorities is consistent with the Foundation's enabling statute because nothing in the statute requires the Foundation to fund grants in the manner proposed by the grant recipients.

But the Court need not reach the merits because Plaintiffs' claims fail at the threshold. *First*, Plaintiffs have failed to establish their standing to challenge the Statement of Priorities. While this Court previously found that Plaintiffs may be able to establish organizational standing for those claims at summary judgment, Plaintiffs advance no argument to meet that

---

[1] Pursuant to Local Civil Rule 7(m), the parties conferred, via counsel, regarding the NSF's motion to strike and Plaintiffs indicate they oppose that motion.

burden in their summary judgment motion. Indeed, their complaint is entirely devoid of any allegations related to injuries from the Change of Priorities. No Plaintiff alleges that it had a grant application denied as a result of the Statement of Priorities. No Plaintiff alleges that its mission has been substantially impaired by the Statement of Priorities.

*Second*, rather than challenge a discrete final agency action, Plaintiffs bring an impermissible programmatic challenge to the Foundation's operations and compliance with a plethora of statutory provisions. Such broad challenge is impermissible under the APA. *Third*, even if it were permissible, the Statement of Priorities concerns the Foundation's grantmaking authority; Congress vested that grantmaking discretion in the Foundation. The APA does not provide for review of agency actions that are committed to agency discretion.

Finally, the Court should strike from the record the declarations Plaintiffs attach to their motion for summary judgment. The sole remaining claims are APA claims, which this Court should review based on the administrative record produced by the Foundation. Rather than confer with the Foundation and seek leave of Court prior to introducing those materials, Plaintiffs simply filed them with their motion for summary judgment. They have now created confusion about the precise contours of the record under review. The Court should reject such gamesmanship.

For these reasons, Defendants respectfully request that the Court strike from the record the declarations attached to Plaintiffs' motion for summary judgment (Dkt. 43-3 to 43-12), deny their motion for summary judgment (Dkt. 43), grant Defendants' cross-motion for summary judgment, and enter judgment for Defendants.

## BACKGROUND

The administrative record establishes that the Statement of Priorities implements the President's policies of promoting equality and merit-based research. AR_000140-144.

## I. **The National Science Foundation.**

The National Science Foundation Act of 1950 (the "Act"), Pub. L. No. 81-507, 64 Stat. 149, established the Foundation as an independent agency "[t]o promote the progress of science; to advance the national health, prosperity, and welfare; to secure the national defense; and for other purposes." NSF funds basic research conducted at U.S. colleges and universities, in fields such as mathematics, computer science, engineering, and biotechnology, as well as Science, Technology, Engineering, and Mathematics (STEM) workforce development, and to that end, the Act gave the Foundation broad grant-making authority. The Act "authorized and directed" the Foundation to "initiate and support basic scientific research" in a range of scientific and mathematical fields through "contracts or other arrangements (including grants, loans, and other forms of assistance)." *Id.* § 3(a)(2). The Act gave the Foundation latitude to fund any research the Foundation "deem[ed] necessary to carry out" its mission. *Id.* § 11(c). And the Act authorized the Foundation to use "its discretion" to use appropriations in whatever way would "best realize" four objectives: (1) having qualified persons perform the research; (2) "strengthening the research staff of organizations" in the United States; (3) "aiding institutions, agencies, or organizations which, if aided, will advance basic research"; and (4) "encouraging independent basic research by individuals." *Id.* § 14(g). The Act otherwise provided no limitations on how to make or fund grants. The Act's original grant-making authorities continue, in effect, substantially unchanged today. *See* 42 U.S.C. §§ 1862(a)(1), 1870(c), 1873(e).

In an average year, the Foundation issues approximately 11,000 competitive awards for research, education, and training. In doing so, it provides funding to approximately 1,900 academic and other private and public institutions, accounting for twenty-five percent of all federally funded research at academic institutions. The Foundation's funding reaches roughly 350,000 researchers, entrepreneurs, students and teachers across all fifty states and U.S. territories.

*See About NSF*, https://www.nsf.gov/about (last visited August 20, 2026). In the most recent Strategic Plan, NSF elucidated four core values guiding the Foundation's mission and work: excellence, impact, integrity, and accountability. *See NSF FY 2026-2030 Strategic Plan*, https://nsf-gov-resources.nsf.gov/files/FY2026-2030-Strategic-Plan.pdf (last visited August 20, 2026).

## II. Executive Orders Promoting Equal Treatment for All and Merit-Based Research.

Immediately upon taking office in 2025, President Donald Trump signed several executive orders relevant to this case, restoring merit-based opportunities and promoting equal treatment of all Americans irrespective of race, gender, national origin, or other characteristics.

First, Executive Order 14,149 found that "the previous administration trampled free speech rights by censoring Americans speech on online platforms, often by exerting substantial coercive pressure on third parties, such as social media companies, to moderate, deplatform, or otherwise suppress speech that the Federal Government did not approve." AR_000001 (the "Free Speech Executive Order"). The Free Speech Executive Order articulated "the policy of the United States" to "ensure that no taxpayer resources are used to engage in or facilitate any conduct that would unconstitutionally abridge the free speech of any American citizen" and to "identify and take appropriate action to correct past misconduct by the Federal Government related to censorship of protected speech." *Id*. § 2(c), (d).

Second, the President signed Executive Order 14,151, ending the prior administration's diversity, equity, and inclusion ("DEI") programs. AR_000003 § 1 (the "Ending DEI Programs Executive Order") (citing Exec. Order 13985: Advancing Racial Equity and Support for Underserved Communities Through the Federal Government). The President articulated his policy that "Americans deserve a government committed to serving every person with equal dignity and respect, and to expending precious taxpayer resources only on making America great." *Id*. § 1.

Third, the President issued Executive Order 14168, where the President found that "[e]fforts to eradicate the biological reality of sex fundamentally attack women by depriving them of their dignity, safety, and well-being" and "[b]asing Federal policy on truth is critical to science inquiry, public safety, morale, and trust in government itself." AR_000006 § 1. That executive order declared "the policy of the United States to recognize two sexes, male and female." *Id.* § 2.

Fourth, the President issued Executive Order 14173, declaring that DEI and DEIA programs "can violate the civil-rights laws of this Nation." AR_000010 § 1. The President declared "the policy of the United States to protect the civil rights of all Americans and to promote individual initiative, excellence, and hard work." *Id.* § 2.

Finally, the President issued Executive Order 14,222, "Implementing the President's "Department of Government Efficiency' Cost Efficiency Initiative." AR_000014-016. The purpose of EO 14,222 is to "commence[] a transformation in Federal spending on contracts, grants, and loans to ensure Government spending is transparent and Government employees are accountable to the American public." *Id.* § 1.

Collectively, these Executive Orders clearly established the Administration's policy direction to federal Agencies, including the Foundation.

## III. <u>Congressional Criticism of the Foundation's Programs</u>.

Beginning as early as February 2024 and continuing into early 2025, Congress publicly expressed concern over the Foundation's "funding of AI-powered censorship and propaganda tools, and its efforts to hide its actions and avoid political and media scrutiny," AR_000021, and the Foundation's decision to prioritize federal funding to "questionable projects that promoted Diversity, Equity, and Inclusion (DEI) or advanced neo-Marxist class warfare propaganda." AR_000099. The DEI and mis/dis/malinformation projects specifically were identified in a public database released by Congress, evidencing that at least a certain portion of NSF's grant portfolio

could be seen as misaligned with the Administration's priorities as announced in early 2025. As a result, the Foundation accounted for Congress' perspective as it worked to implement the President's overall policy direction.

## IV. <u>The Foundation's Statement of Priorities</u>.

To ensure alignment with the Administration priorities (as evidenced by the numerous Executive Orders) and to remain grounded in the Foundation's statutory authorities first espoused in 1950, the Foundation temporarily paused new funding activities and undertook a review of its grant portfolio.

Accordingly, on April 18, 2025, the Foundation issued a statement of priorities and accompanying frequently asked questions ("FAQs"). AR_000141-144. As Sethuraman Panchanathan, then-Foundation Director, explained in his communication to staff announcing the Statement of Priorities, "the President has directed agencies to ensure that no Federal Government officer, employee, or agent engages in or facilitates any conduct that would unconstitutionally abridge the free speech of any American citizen and that no taxpayer resources are used to engage in or facilitate any conduct that would unconstitutionally abridge the free speech of any American citizen" and that as a result, the Foundation "will not support research with the goal of combating 'misinformation,' 'disinformation,' and 'malinformation' that could be used to infringe on the constitutionally protected speech rights of American citizens across the United States in a manner that advances a preferred narrative about significant matters of public debate." AR_000203.

The Foundation stated that it "uses two statutory criteria to ensure that every award has the potential to advance new knowledge (Intellectual Merit) with maximum impact on the Nation and its people (Broader Impacts)." AR_000141. And "[t]he principles of merit, competition, equal opportunity, and excellence are the bedrock of the [Foundation] mission." *Id.* Thus, the Foundation's "broadening participation activities, including activities undertaken in fulfillment of

the Broader Impacts criterion, and research on broadening participation must aim to create opportunities for all Americans everywhere." *Id.* And those "efforts should not preference some groups at the expense of others, or directly/indirectly exclude individuals or groups." *Id.* As a result, "[r]esearch projects with more narrow impact limited to subgroups of people based on protected class or characteristics do not effectuate [the Foundation] priorities." *Id.*

While the Foundation disavowed "narrow impact" projects, it was unequivocal that it "will continue to support research with the goal of understanding or addressing participation in STEM, in accordance with all applicable statutes and mandates, with the core goal of creating opportunities for all Americans." *Id.* Indeed, the Foundation "will continue to support basic and use-inspired research in S&E fields that focus on protected characteristics when doing so is intrinsic to the research question and is aligned with Agency priorities." *Id.*

As the FAQs explained, the Foundation "must ensure that taxpayer dollars are spent in the most efficient way possible consistent with each Agency's mission." AR_000142. Thus, the Foundation continues "to prioritize cutting-edge discovery science and engineering (S&E) research, advancing technology and innovation, and creating opportunities for all Americans in every region of the Nation." *Id.* And the Foundation "will continue to operate programs that contain elements of broadening participation for individuals based on protected characteristics that are explicitly established in law and prioritized in [the Foundation] appropriations language." AR_000143. Those projects "should align with the relevant statutory language and aim to generate knowledge broadly impactful to Americans from all backgrounds and regions in the country." *Id.* But those projects "must not directly or indirectly preference or exclude any Americans on the basis of protected characteristics" and projects "that have limited impact or rely on DEI frameworks or advocacy do not effectuate [Foundation] priorities. *Id.* Still, the Foundation "will

continue to fund projects that rate highly using [its] Intellectual Merit and Broader Impacts review criteria in high priority S&E areas" and "[p]rojects that aim to create more opportunities for more people in every region of the country to participate in science and technology remain an important part of [the Foundation's] mission." *Id.*

In other words, the Foundation "will continue to operate legally mandated programs that aim to expand participation in STEM for individuals of protected characteristics so long as the projects submitted to these programs do not preference or limit participation based on these protected characteristics." AR_000143.

## LEGAL STANDARDS

"Summary judgment is an appropriate procedure for resolving a challenge to a federal agency's administrative decision when review is based upon the administrative record." *Bloch v. Powell*, 227 F. Supp. 2d 25, 31 (D.D.C. 2002) (quoting *Richards v. INS*, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977)). In cases involving review of an agency action under the APA, the standard in Rule 56 does not apply due to the courts' limited role in reviewing administrative records. *See Havens v. Mabus*, 146 F. Supp. 3d 202, 214 (D.D.C. 2015). Under the APA, the agency's role is to resolve factual issues and arrive at a decision that is supported by the administrative record, and the court is responsible for determining "whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Id.* (quoting *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769-70 (9th Cir. 1985) (citing *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated on other grounds*, *Califano v. Sanders*, 430 U.S. 99 (1977)); *see also Rempfer v. Sharfstein*, 583 F.3d 860, 865 (D.C. Cir. 2009) (citing *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001) and *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993)).

The APA permits a reviewing court to set aside an agency action only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "[T]he scope of review under the arbitrary and capricious standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Under the APA standard of review, an agency's decision need not be "a model of analytic precision to survive a challenge." *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1404 (D.C. Cir. 1995). "A reviewing court will 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" *Id*. (citing *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974)). It is sufficient if an agency's explanation of its decision contains "a rational connection between the facts found and the choices made." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43. In addition, "if the necessary articulation of basis for administrative action can be discerned by reference to clearly relevant sources other than a formal statement of reasons, [the Court] will make the reference." *See, e.g.*, *Miller v. Lehman*, 801 F.2d 492, 497 (D.C. Cir. 1986) (internal quotation marks omitted).

The "arbitrary and capricious" standard of the APA review asks whether the agency's actions meet a basic standard of reasonableness. *See, e.g.*, *Balt. Gas & Elec. Co. v. Nat. Res. Def. Council*, 462 U.S. 87, 105 (1983); *Consolo v. Fed. Maritime Comm.*, 383 U.S. 607, 619–620 (1966). Summary judgment "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *See, e.g., Hi-Tech Pharmacal Co. v. FDA*, 587 F. Supp. 2d 13, 18 (D. D.C. 2008). The dispositive question therefore is whether the agency's "decision was based on a consideration of relevant factors and whether there has been a clear error of judgment." *Overton Park*, 401 U.S. at 416.

## ARGUMENT

### I. <u>The Court Should Strike Plaintiffs' Declarations.</u>

In support of their motion for summary judgment, Plaintiffs submit without explanation 173 pages of extra-record declarations. *See* Dkt. 43-3 to 43-12. Yet, Plaintiffs readily concede that the only remaining claims are their "prospective APA claims." Pls.' Mem. (Dkt. 43-1) at 17; *see also* Order (Dkt. 38) at 1 ("The motion to dismiss is DENIED as to Plaintiffs' prospective claims under these Counts challenging the [Statement of Priorities] Decision as arbitrary and capricious and contrary to law."). Resolution of those claims turns on the Court's review of the administrative record provided by the agency, not evidence preferred at the last minute by Plaintiffs. The Court should strike the declarations Plaintiffs appended to their motion for summary judgment.

Judicial review under the APA requires courts to "review the whole record or those parts of it cited by a party." 5 U.S.C. § 706. The administrative record includes all materials compiled by the agency that were "before the agency at the time the decision was made." *Env't Def. Fund, Inc. v. Costle*, 657 F.2d 275, 284 (D.C. Cir. 1981); *see also Edison Elec. Inst. v. OSHA*, 849 F.2d 611, 617–18 (D.C. Cir. 1988); *Overton Park*, 401 U.S. at 419. Courts generally must base their reviews "on the full administrative record that was before the [agency] when she made her decision." *Am. Bioscience, Inc. v. Thompson*, 243 F.3d 579, 582 (D.C. Cir. 2001).

Courts "start with a presumption that the Agency properly compiled the administrative record." *Stand Up for Cal.! v. Dep't of Interior*, 315 F. Supp. 3d 289, 293 (D.D.C. 2018) (citing *Amfac Resorts, L.L.C. v. Dep't of Interior*, 143 F. Supp. 2d 7, 12 (D.D.C. 2001)). The "'focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.'" *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985) (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). To ensure that the courts review

"only those documents that were before the agency" when it made its decision, courts "'do not allow parties to supplement the record unless they can demonstrate unusual circumstances justifying a departure from this general rule.'" *Dist. Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46, 55 (D.C. Cir. 2015) (quoting *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008)).

Plaintiffs' motion for summary judgment addresses only the merits of Plaintiffs' remaining APA claims and they obviously present the extra-record evidence to bolster those merits arguments. This flies in the face of a long line of controlling precedent providing that judicial review of agency action, except in rare circumstances, is limited to the administrative record. *E.g. Overton Park*, 401 U.S. at 420 (court must evaluate the decision of the agency based on "the full administrative record that was before the Secretary at the time he made his decision") (emphasis added); *Camp*, 411 U.S. at 142 (the "focal point for judicial review [of agency action] should be the administrative record already in existence, not some new record made initially in the reviewing court"); *Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 514 (D.C. Cir. 2010) ("APA limits judicial review to the administrative record except when there has been a strong showing of bad faith or improper behavior or when the record is so bare that it prevents effective judicial review.") (citation modified).

The Supreme Court has repeatedly emphasized the strict limitations the APA places on judicial review. *See*, *e.g.*, *Florida Power*, 470 U.S. at 744 ("The reviewing court is not generally empowered to conduct a de novo inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry."). As the D.C. Circuit has continually affirmed, it is black-letter administrative law that in an APA case, a reviewing court "should have before it neither more nor less information than did the agency when it made its decision." *Hill Dermaceuticals, Inc. v. Food & Drug Admin.*, 709 F.3d 44, 47 (D.C. Cir. 2013) (affirming district court's decision

to reject post-decisional factual information that was not before FDA at the time of the challenged decisions because whether FDA's decisions were well-reasoned based upon the information available to FDA at the time FDA made those decisions).

Under some limited circumstances, the Court may permit a supplementation of the administrative record or consideration of extra-record evidence. *Pacific Shores Subdivision, Ca. Water Dist. v. Army Corps. of Engineers*, 448 F. Supp. 2d 1, 5 (D.D.C. 2006). To "supplement the record, the moving party must rebut the presumption of administrative regularity and show that the documents to be included were before the agency decisionmaker." *Id*. To consider extra-record evidence, "the moving party must prove applicable one of the eight recognized exceptions to the general prohibition against extra-record review." *Id*. Either way, a party must seek leave of court to explain the evidence they seek the Court to consider and its purpose. *Id*. at 6 ("While a motion for the Court to consider the fourteen documents at issue as extra-record evidence may be appropriate in this case, such a motion is not presently before me."). Plaintiffs have not done so here, do not explain the purpose of the declarations (supplementation or extra-record evidence) or attempt to meet the high standard for them to be considered by the Court, and the Court therefore should strike the declarations from the record.

Indeed, it is notable that Plaintiffs elected to file extra-record materials contemporaneously with their summary judgment brief. Their decision to do so, without seeking leave of court, places the burden on the Foundation to move to strike, and does so during the limited time the Foundation has to prepare its merits brief. At the same time, it leaves some uncertainty about the documents and arguments to which the Foundation must respond, and improperly places the extra-record material before the Court during the merits review phase. Plaintiffs had ample opportunity to move to compel consideration of extra-record information prior to filing their motion for summary

judgment. Rather than conferring with the Foundation under Local Civil Rule 7(m) and moving for leave to file extra-record information prior to briefing this case on the merits, Plaintiffs simply attached the extra-record exhibits to their summary judgment memorandum and relied on them in their briefing. Plaintiffs' disregard for both the applicable briefing schedule and proper procedures for seeking consideration of extra-record materials should not be rewarded, and the motion to strike should be granted based on Plaintiffs' procedural failure alone.

## II. <u>Plaintiffs' Claims Fail at the Threshold.</u>

### A. Plaintiffs Lack Standing to Challenge the Statement of Priorities.

The Court should dismiss the remaining claims because Plaintiffs lack Article III standing to challenge the Statement of Priorities. At its "irreducible constitutional minimum," Article III standing requires a plaintiff, as the party invoking the Court's jurisdiction, to establish three elements: (1) a concrete and particularized injury-in-fact, either actual or imminent, and not conjectural or hypothetical, (2) a causal connection between the injury and defendants' challenged conduct, and (3) a likelihood that the injury suffered will be redressed by a favorable decision. *Lujan v. Defs. for Wildlife*, 504 U.S. 555, 560-61 (1992).

Because "standing is not dispensed in gross," "plaintiffs must demonstrate standing for each claim that they press against each defendant, and for each form of relief that they seek." *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (citation and internal marks omitted). The "standing inquiry [must be] especially rigorous when reaching the merits of the dispute would force [a court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Raines v. Byrd*, 521 U.S. 811, 819–20 (1997).

Further, to establish injury-in-fact, Plaintiffs must allege harm that is "actual or imminent, not speculative—meaning that the injury must have already occurred or be likely to occur soon." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). If the injury has not

come to pass, it must be "certainly impending"; "allegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation modified). And it must be "concrete—that is, real, and not abstract." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021) (citation modified); *see also Murthy*, 603 U.S. at 43, 58 ("because the plaintiffs request forward-looking relief, they must face a real and immediate threat of repeated injury" (citation modified)).

Plaintiffs have failed to meet that burden here because they have not established injury-in-fact. Specifically, no Plaintiff has alleged that it (or its member) was denied a grant based on the Statement of Priorities. Indeed, the only injuries Plaintiffs allege in their Complaint related to grant terminations. Compl. (Dkt. 2-1) ¶¶ 75-138. To the extent Plaintiffs allege that specific grant applications have not been adjudicated or otherwise funded, Plaintiffs have offered no evidence to support their claims. *Id.* ¶¶ 139-150. "At the summary judgment stage of the proceedings, [Plaintiffs] can no longer rest on mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." *Swanson Group Mfg. LLC v. Jewell*, 790 F.3d 235, 240 (D.C. Cir. 2015) (citation modified). Plaintiffs here do not even attempt to establish their standing. *See generally* Pls.' Mem. (Dkt. 43-1). And even if they did, any claim that an application has not been adjudicated would be irrelevant because Plaintiffs do not bring an unreasonable delay claim.

What remains is organizational standing. Indeed, that is the road this Court travelled when it found standing for Plaintiff WEPAN at the preliminary injunction stage. *Am. Ass'n of Physics Teachers, Inc. v. Nat'l Science Found.*, 804 F. Supp. 3d 45, 68-69 (D.D.C. 2025). The Court credited Elizabeth Litzler's declaration, which explained that her organization was "involved in sixteen grant proposals that [were then] under review at the Foundation" and that "expenditures of

time and effort—and the potentially lost opportunity to compete for funding—suffice[d] to demonstrate standing." *Id.* This Court found those assertions sufficient for standing purposes. The Foundation respectfully disagrees but also recognizes that at the preliminary injunction stage Plaintiffs only needed to establish that they "likely [would] be able to demonstrate standing at the summary judgment stage." *Centro de Trabajadores Unidos v. Bessent*, 167 F.4th 1218, 1224 (D.C. Cir. 2026). That this less demanding standard was the standard on which the Court relied in its prior decision is reinforced by the two cases this Court cited to find injury-in-fact. *Am. Ass'n.*, 804 F. Supp. 3d at 69 (citing *Global Health Council v. Trump*, 153 F.4th 1, 12 (D.C. Cir. 2025) and *Abigail All. for Better Access to Dev. Drugs v. Eschenbach*, 469 F.3d 129, 132–33 (D.C. Cir. 2006)). One relied on the preliminary injunction standard, *see Global Health*, 153 F.4th at 12 ("likely to succeed on the merits"), the other on the motion to dismiss one, *Abigail All.*, 469 F.3d at 132 ("adequate showing of standing").

But Plaintiffs' burden on summary judgment is much higher. The Court "must assess the record under the standard set forth in Rule 56 of the Federal Rules of Civil Procedure." *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 883-84 (1990). The summary judgment "standards are fully applicable when a defendant moves for summary judgment, in a suit brought under § 702, on the ground that the plaintiff has failed to show that he is "adversely affected or aggrieved by agency action within the meaning of a relevant statute." *Id.* at 884. And "the burden is on the party seeking review under § 702 to set forth specific facts (even though they may be controverted by the Government) showing that he has satisfied its terms." *Id.* Plaintiffs have not pled any facts to support organizational standing. *See generally* Compl. (Dkt. 2-1). Nor do Plaintiffs present any argument for organizational standing in their motion for summary judgment despite submitting numerous declarations. It is neither the Court's nor the government's role "to sift and sort through

the record" in search for material information. *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 153 (D.C. Cir. 1996). Plaintiffs have the burden of establishing their standing and they have patently failed to do so here. *Lujan*, 504 U.S. at 561.

But even if the Court considers the additional declarations, those fall far short of establishing any Plaintiff's standing. Consider the Litzler supplemental declaration, which comes nowhere close to establishing the substantial impairment required to support WEPAN's standing. The Court previously cited *Abigail Alliance* for organizational standing, a concept first articulated by the Supreme Court's *Havens Realty* decision. *Abigail All.*, 469 F.3d at 133 (citing *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 379 (1982)). To establish organizational standing, an organization must show that the agency's action "perceptibly impaired" the organization's programs. *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1434 (D.C. Cir. 1995). The Supreme Court has cautioned that "*Havens* was an unusual case," and its holding should not be extended "beyond its context." *All. For Hippocratic Med.*, 602 U.S. at 396. Indeed, courts finding *Havens* standing have taken great care to ensure that factual assertions support the legal conclusion that an organization's mission has been rendered virtually impossible because of the challenged action. *See*, *e.g.*, *Amica Center of Immigrant Rts v. EOIR*, 822 F. Supp. 3d 119, 141-46 (D.D.C. 2026). Otherwise "an organization could claim injury-in-fact nearly any time there was a change in the law relevant to its mission." *Coalition for Humane Immigrant Rts. v. Dep't of Homeland Sec.*, 780 F. Supp. 3d 79, 91 (D.D.C. 2025).

That is precisely what Plaintiffs hope to achieve here. Litzler submitted a perfunctory supplemental declaration, which only states that the Center for Evaluation & Research for STEM Equity has eighteen grant applications under review at the Foundation. Litzler Suppl. Decl. (Dkt. 43-5) ¶ 9. Noticeably absent from the supplemental declaration is any discussion of whether any

of the sixteen grants that were pending in 2025 was denied. She does not explain how, if at all, the Statement of Priorities affects, let alone perceptibly impairs the work of her organization. She does not explain how reliant her organization is on Foundation grants, whether alternative funding is available, or how the organization has used its resources to respond to the Statement of Priorities. Her expressions of concern that grant applications may be denied simply do not suffice for summary judgment. *See id.* ¶ 11; *see also Air Excursions v. Yellen*, 66 F.4th 272, 277 (D.C. Cir. 2023) (conclusory statements are insufficient to establish standing).

As a result, Plaintiffs lack standing.

**B. Plaintiffs' Claims Are an Impermissible Programmatic Challenge.**

Plaintiffs' claims and requested relief are a textbook example of a programmatic challenge unavailable under the APA. Instead of presenting the court with a "narrow question to resolve," *Cobell v. Kempthorne*, 455 F.3d 301, 307 (2006), Plaintiffs challenge a host of individual actions and seek broad relief, Compl. (Dkt. 2-1) at 57-58. Plaintiffs' allegations reveal that they do not seek judicial review of a discrete agency action. They simply disagree with the Foundation's policy choices.[2] Regarding the Foundation's Statement of Priorities, Plaintiffs complain that the Foundation "does not explain how the change in policy is consistent with the Broader Impacts Criterion or other statutory mandates to support STEM education for underrepresented groups." Compl. (Dkt. 2-1) ¶ 57. The administrative record establishes what the Foundation has asserted since the beginning: Plaintiffs have not identified a final agency action subject to APA review. The administrative record shows that the Agency took several additional steps to implement the

[2] Plaintiffs readily concede that the Court did not reach many of the Foundation's preliminary arguments. MSJ Mem. (Dkt. 43-1) at 18 n.19 ("The Court's Order denying, in part, Defendants' motion to dismiss implicitly rejected those arguments by correctly finding that Plaintiffs' prospective APA claim survived Defendants' motion.").

Change of Priorities – it identified grants contrary to the Change of Priorities and then terminated those grants. *See* AR_000140 ("I know many of you were involved in the review of our current awards and I know that was not an easy task."). The same would be true prospectively – to implement the Change of Priorities for future grants, a plaintiff would need to apply for a grant and that grant be refused because it conflicts with the Change of Priorities. Yet, Plaintiffs do not allege any grant application was so rejected. Courts "have long recognized that the term [agency action] is not so all-encompassing as to authorize judicial review over everything done by an administrative agency." *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004) (citation modified). Plaintiffs, therefore, must plead "an identifiable action or event" and "direct [their] attack against some particular 'agency action' that causes [them] harm." *Lujan*, 497 U.S. at 891, 899 (citation modified). The APA limits judicial review to "circumscribed, discrete agency actions." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004). These final agency actions must be "circumscribed [and] discrete." *Id.*

Indeed, the APA does not provide for "general judicial review of [an agency's] day-to-day operations," *Lujan*, 497 U.S. at 899, like "constructing a building, operating a program, or performing a contract," *Vill. of Bald Head Island v. U.S. Army Corps. of Eng'rs*, 714 F.3d 186, 193 (4th Cir. 2013). Plaintiffs assert that the Foundation's public statements "reveal a significant change in [Foundation] policy" and complain that the Foundation "does not explain how the change in policy is consistent" with statutory requirements. Compl. (Dkt. 2-1) ¶¶ 57, 60. "Because an on-going program or policy is not, in itself, a final agency action under the APA, [a court's] jurisdiction does not extend to reviewing generalized complaints about agency behavior." *Cobell*, 455 F.3d at 307 (citation modified).

Plaintiffs' motion for summary judgment is revealing. They cite to a plethora of statutory provisions, which they say show "Congress authorized or directed NSF to fund projects to increase the participation in STEM of persons from underrepresented group." Pls.' Mem. (Dkt. 43-1) at 12 n.4; *see also id*. 20-21. Addressing these types of claims would require the Court to supervise the agency's activities and determine how the agency accomplishes each statutorily-mandated function—an even more extreme kind of supervisory claim than was at issue and rejected in *Lujan*. *See* 497 U.S. at 892-93. "But the challenges here bundle together broad lists of grievances and seek wholesale modifications to agency operations writ large." *Ass'n for Ed. Fin. & Policy, Inc. v. McMahon*, 786 F. Supp. 3d 13, 18 (D.D.C. 2025). Such claims entirely circumvent the purpose of the APA's discrete agency action requirement, which is to "protect agencies from undue judicial interference with their lawful discretion, and to avoid judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve." *S. Utah*, 542 U.S. at 66-67. Plaintiffs certainly may direct their grievances to "the offices of the [Foundation] or the halls of Congress." *Lujan*, 497 U.S. at 891 (citation modified). But "it is not this Court's place to breathe life back into wide swathes of the [Foundation's Priorities] and then monitor the agency's day-to-day statutory compliance; essentially what Plaintiffs seek." *Ass'n. for Ed.*, 786 F. Supp. 3d at 18 (citation modified).

**C. Congress Committed Grant Administration to Agency Discretion.**

Plaintiffs' claims are separately unreviewable because they contest policy decisions that are "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). The "allocation of funds from a lump-sum appropriation" is an "administrative decision traditionally regarded as committed to agency discretion." *Lincoln v. Vigil*, 508 U.S. 182, 192 (1993). "[A]s long as the agency allocates funds from a lump-sum appropriation to meet permissible statutory objectives, § 701(a)(2) gives the courts no leave to intrude." *Id*. at 193. These principles are not limited to lump-sum

appropriations; section 701(a)(2) bars review when an appropriation confers discretion on the agency. *Milk Train, Inc. v. Veneman*, 310 F.3d 747, 751-52 (D.C. Cir. 2002).

The Foundation's Change of Priorities, which informed additional actions to award future grants, is unreviewable. Congress has authorized the Foundation to issue grants it "deems necessary to carry out" its mission. 42 U.S.C. § 1870(c). To that end, the Foundation is given "discretion" to "utilize appropriations" to "best realize" four congressional objectives. *Id.* § 1873(e). Statutory language that empowers the agency head in such a manner "fairly exudes deference to the" agency head. *See Webster v. Doe*, 486 U.S. 592, 600 (1988). Since the ultimate action—awarding grants—is unreviewable under the APA, so is the subsidiary action of articulating priorities. As the Supreme Court recently explained, "[i]n APA cases, an agency's subsidiary decisions merge into the final agency action, which is then subject to review." *Mullin v. Doe*, 146 S. Ct. 2121, 2137 (2026) (citing *Army Corps of Engineers v. Hawkes Co.*, 578 U.S. 590, 597–598 (2016)). "If the final agency action is unreviewable, then so too are subsidiary determinations." *Id.*

Plaintiffs cannot overcome the discretion conferred on the Foundation by Congress under the Act. Where a decision is presumptively non-reviewable, as with funding allocations, "Congress may overcome the presumption against review by providing 'guidelines for the agency to follow in exercising its enforcement powers,' by 'setting substantive priorities, or by otherwise circumscribing an agency's power.'" *Holbrook v. Tenn. Valley Auth.*, 48 F.4th 282, 293 (4th Cir. 2022) (quoting *Heckler v. Chaney*, 470 U.S. 821, 833 (1985)). Plaintiffs do not cite any particular sources of law that show that Congress intended through the APA to waive sovereign immunity by curbing the Foundation's discretion to issue its Change of Priorities.

## III. <u>Plaintiffs' Claims Fail on the Merits.</u>

### A. Arbitrary and Capricious

Plaintiffs allege that NSF's Statement of Priorities is arbitrary and capricious because, according to them, it contained "no indicia of reasoned decision making," failed to "acknowledge[] its change in position" from prior NSF priorities, and failed to consider the "substantial reliance interests" of grantees. Compl. (Dkt. 2-1) ¶¶ 160-63.

The APA standard of review "is narrow," *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43, and "deferential," *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). "A court simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." *Id*. The Foundation stayed within those bounds.

Indeed, "the agency's path may reasonably be discerned" from the record. *Bowman Transp*, 419 U.S. at 286. The Foundation implemented sweeping policy directives in four Executive Orders: EO 14149, 14151, 14168, 14173, and 14222. AR_000001-016. Those executive orders required the Foundation to discontinue funding for programs that "abridge the free speech of any American citizen," AR_000001, advance DEI programs or "promote gender ideology," AR_000004; AR_000007, and require compliance with anti-discrimination laws, AR_000011. Plaintiffs may find this unsatisfactory, but "if an executive agency . . . may lawfully implement the Executive Order, then it must do so." *Building & Const. Trades Dept., AFL-CIO v. Allbaugh*, 295 F.3d 28, 33 (D.C. Cir. 2002).

A report from two House committees criticized the Foundation's "funding of AI-powered censorship and propaganda tools, and its efforts to hide its actions and avoid political and media scrutiny." AR_000021. Another found that between 2021 and 2024, Foundation grants "centered on DEI initiatives" increased from "0.29% of all grants" to "more than a quarter (27%) of new

grants[.]" AR_000099 (citing U.S. Senate Committee on Commerce, Science, and Transportation, *Diversion. Extremism. Ideology.*: *How the Biden-Harris NSF Politicized Science* 3-4, available at https://www.commerce.senate.gov/wp-content/uploads/media/doc/NSF%20Politicized%20Funding_FINAL.pdf (last visited Aug. 20, 2026)). Thus, by adopting the Statement of Priorities, the Foundation was responding to specific criticism from Congress and commands by the President. Plaintiff's argument to the contrary fails for that reason. Pls.' Mem. (Dkt. 43-1) at 22-25.

Plaintiffs' remaining arguments fail as well. They argue that the Foundation did not consider reliance-interest. Pls.' Mem. (Dkt. 43-1) at 25-26. First, Plaintiffs have no legally protectible reliance interests in grants that they have not yet been awarded. *See Nat'l Org. of Veterans' Advocs., Inc. v. Sec'y of Veterans Affs.*, 927 F.3d 1263, 1269 n.4 (Fed. Cir. 2019) (holding amendment to Veterans Affairs' regulations "[did] not defeat veterans' reliance interests" because the amendment "applied only prospectively"). And with respect to now-terminated grants, this Court already concluded those "retrospective APA claims fall within the Court of Federal Claims' exclusive jurisdiction," *Am. Ass'n*, 804 F. Supp. 3d at 66, and dismissed them, Order (Dkt. 38) at 1 ("The motion [to dismiss] is GRANTED as to Plaintiffs' retrospective claims under these Counts challenging the loss of their grant funding because the Court lacks jurisdiction over those claims.").

Even if those claims are viable, they fail. Plaintiffs may disagree with the agency's weighing of Plaintiffs' interests against the agency's responsibilities and priorities, but Plaintiffs cannot substitute their judgment for the agency's. *See Am. Petro. Inst. v. Dep't of Interior*, 81 F.4th 1048, 1066 (10th Cir. 2023) ("Though an agency must adequately consider any 'legitimate reliance' on an existing policy, such reliance is not 'necessarily dispositive' to the agency's

decision"; "an agency may conclude, for instance, that reliance interests were 'entitled to no or diminished weight' or outweighed by 'other interests and policy concerns") (quoting *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 32 (2020)); *Calixto v. Walsh*, Civ. A. No. 19-1853 (CKK), 2022 WL 4446383, at *16 (D.D.C. Sep. 23, 2022) ("Even if the agency considers the reliance interests to be serious, it may nonetheless determine that other interests and policy concerns outweigh any reliance interests."). Where the Foundation decided to terminate a grant that was funding research, Plaintiffs' or their members' reliance on that research funding cannot compel NSF to maintain the grant.

Plaintiffs also argue that the Foundation did not consider "'an important aspect of the problem" because the Foundation did not "recogniz[e] the relevant congressional policies in enacted statutes." Pls.' Mem. (Dkt. 43-1) at 26 (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43). To the contrary, the Statement of Priorities by its plain terms provides that the Foundation "will continue to operate programs that contain elements of broadening participation for individuals based on protected characteristics that are explicitly established in law and prioritized in [Foundation] appropriations language." AR_000143. Such "research and broader impacts activities" must "align with the relevant statutory language and aim to generate knowledge broadly impactful to Americans from all backgrounds and regions in the country." *Id*. And in providing that guidance, the Foundation knew that it "uses two statutory criteria to ensure that every award has the potential to advance new knowledge (Intellectual Merit) with maximum impact on the Nation and its people (Broader Impacts)." AR_000141. Plaintiffs point to no authority requiring the Foundation to list every statutory provision that may be relevant to its analysis.

Plaintiffs appear to argue that the Foundation was required to consider prior policy pronouncements. Pls.' Mem. (Dkt. 43-1) at 27. They offer no support for that proposition. Indeed,

requiring a federal agency to consider prior policies would place a heightened burden in administrative policy cases than otherwise provided under the APA. The Supreme Court has categorically rejected such a heightened standard. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 514-16 (2009). As the Supreme Court explained, "the agency need not always provide a more detailed justification than what would suffice for a new policy created on a blank slate." *Id*. at 515. And while the Supreme Court provided for limited exceptions—contradictory factual findings or "serious reliance interests"—as explained above, those are not implicated here. *See id.*

Finally, Plaintiffs argue that the Foundation "acted with an unalterably closed mind." Pls.' Mem. (Dkt. 43-1) at 27-29. It is evident that Plaintiffs fundamentally disagree with the President's policy choices concerning DEI. The Court has no role arbitrating "in abstract policy disagreements." *S. Utah*, 542 U.S. at 66-67. Plaintiffs should channel their grievances to "'the offices of the [Foundation] or the halls of Congress[.]'" *Ass'n for Ed.*, 786 F. Supp. 3d at 18 (quoting Lujan, 497 U.S. at 891)).

Plaintiffs readily concede that the Statement of Priorities implement "five Executive Orders." Pls.' Mem. (Dkt. 43-1) at 28. They offer no authority for the proposition that the Foundation was free to disregard those Presidential directives. Indeed, the Foundation must adhere to the Executive Orders, which remain effective to this date. *N. Am.'s Bldg. Trades Unions v. Dep't of Def.*, 783 F. Supp. 3d 290, 310 (D.D.C. 2025) ("Agencies are bound to follow binding executive orders unless rescinded or overridden through lawful procedures.").

In sum, the Statement of Priorities was neither arbitrary not capricious.

**B. Contrary to Law**

Plaintiffs allege that the Statement of Priorities is contrary to law because it violates the statutory provision requiring NSF to support "broadening participation of women and

underrepresented populations in STEM," Compl. (Dkt. 2-1) ¶ 167 (citing 42 U.S.C. § 1862p-14(a)(7)).

Plaintiffs mainly argue that § 1862p-14(a)(7) requires the Foundation to prioritize "diversity." MSJ Mem. (Dkt. 43-1) at 21. But they do not explain what they mean. As best as can be surmised from their memorandum, Plaintiffs read the provision to require "fund[ing] projects related to diversity, equity, and inclusion." *Id*. at 8. However, the Statement of Priorities is entirely consistent with the requirement of § 1862p-14(a)(7) because it does not state that the Foundation will not fund the activities or topics related to diversity or inclusion, nor does it state that the Foundation does not have the authority to fund them. Rather, the Statement of Priorities states that the Foundation will "continue to support research with the goal of understanding or addressing participation in STEM" and "continue to support basic and use-inspired research in S&E fields that focus on protected characteristics when doing so is intrinsic to the research question." A "directive that the agency avoid supporting research whose impact is narrowly limited to certain groups hardly precludes the agency from promoting the participation of previously underrepresented groups in STEM." *New York v. Nat'l Science Found.*, 793 F. Supp. 3d 562, 612-13 (D.D.C. 2025).

Moreover, Plaintiffs readily concede that § 1862p-14(a)(7) is "[o]one of [the] statutorily mandated criteria that considers whether a project 'expands participation of women and individuals from underrepresented groups in STEM.'" Pls.' Mem (Dkt 43-1) at 20 (quoting § 1862p-14(a)(7)) (citation modified). The impacts review provision enumerates seven criteria, of which (a)(7) is but one. 42 USC 1862p-14(a). Nothing in the statutory text indicates that Congress requires the Foundation to support all simultaneously or to preference one over another. Plaintiffs also ignore that the Foundation must evaluate grant proposals using broader impacts and

intellectual merit, 42 U.S.C. 1862s, and, for many of the programs Plaintiffs identify in footnote 4, the Act still requires that grants be awarded on a merit-reviewed basis. *See*, *e.g.*, § 1862n, § 1862n-1, § 1862n-2, § 1862n-10, § 1862o-12, § 1862p-2, § 1862p-6, and § 1862p-13. The Statement of Priorities "by its terms does not require [the Foundation] to cease supporting projects aimed at expanding participation in STEM by women, minorities, and people with disabilities." *New York*, 793 F. Supp. 3d at 613.

In short, the Statement of Priorities is consistent with the Act.

**CONCLUSION**

For these reasons, the Foundation respectfully requests that the Court grant its motion to strike, deny Plaintiffs' motion for summary judgment, grant the Foundation's cross-motion for summary judgment, and enter judgment for the Foundation

Dated: August 20, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: /s/ *Dimitar P. Georgiev*
DIMITAR P. GEORGIEV, D.C. Bar #1735756
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252 –2500 (main)

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN ASSOCIATION OF PHYSICS TEACHERS, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL SCIENCE FOUNDATION, et al.,<br><br>Defendants. | Civil Action No. 25-1923 (JMC) |

**[PROPOSED] ORDER**

UPON CONSIDERATION of Plaintiffs' motion, Defendants' combined opposition and cross-motion, and the entire record herein, it is hereby

ORDERED that Defendants' motion to strike is GRANTED, and it is further

ORDERED that the Clerk of Court shall strike from the record docket entries 43-3 through 43-12, and it is further

ORDERED that Plaintiffs' motion for summary judgment is DENIED, and it is further

ORDERED that Defendants' cross-motion for summary judgment is GRANTED, and it is further

ORDERED that judgment is entered for Defendants.

SO ORDERED:

____________________
Date

____________________________________________
JIA M. COBB
United States District Judge