UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN ASSOCIATION OF PHYSICS TEACHERS, INC., et al.,

Plaintiffs,

v.

NATIONAL SCIENCE FOUNDATION, et al.,

Defendants.

Civil Action No. 25-1923 (JMC)

**DEFENDANTS' REPLY**
**IN FURTHER SUPPORT OF THEIR CROSS-MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

Table of Contents ........................................................................................................ i

Table of Authorities ..................................................................................................... ii

Argument ...................................................................................................................... 1

I. The Court Should Strike Plaintiffs' Exhibits. ....................................................... 1

II. The Court Should Grant Defendants' Cross-Motion for Summary Judgment ....... 1

A. Plaintiffs Have Failed to Establish Standing. ............................................ 1

B. Plaintiffs' Claims Fail on the Merits. ........................................................ 7

Conclusion .................................................................................................................. 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abigail All. for Better Access to Dev. Drugs v. Eschenbach*,
469 F.3d 129 (D.C. Cir. 2006) ........ 7

*Am. Ass'n of Physics Teachers, Inc. v. NSF*,
804 F. Supp. 3d 45 (D.D.C. 2025) ........ 3, 4, 7

*Bennett v. Spear*,
520 U.S. 154 (1997) ........ 8

*Chamber of Com. of U.S. v. Reich*,
74 F.3d 1322 (D.C. Cir. 1996) ........ 9

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ........ 5, 6

*Cntr. for Auto Safety v. NHTSA*,
452 F.3d 798 (D.C. Cir. 2006) ........ 8

*Does 1-9 v. Dep't of Just.*,
Civ. A. No. 25-0325 (JMC), 2025 WL 1984428 (D.D.C. Jul. 17, 2025) ........ 10

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
528 U.S. 167 (2000) ........ 2

*Global Health Council v. Trump*,
153 F.4th 1 (D.C. Cir. 2025) ........ 5

*Johnson v. Panetta*,
953 F. Supp. 2d 244 (D.D.C. 2013) ........ 2

*Lincoln v. Virgil*,
508 U.S. 182 (1993) ........ 8

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ........ 2, 4, 7

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) ........ 9

*Nat'l Digital Inclusion All. v. Trump*,
2026 WL 2042806 (D.D.C. Jul. 15, 2026) ........ 4, 5, 6

*Nat'l Min. Ass'n v. McCarthy*,
758 F.3d 243 (D.C. Cir. 2014) ........ 8

*People for the Ethical Treatment of Animals v. Dep't of Agric.*,
918 F.3d 151 (D.C. Cir. 2019) ........ 9

*Raines v. Dep't of Just.*,
424 F. Supp. 2d 60 (D.D.C. 2006) ........ 2

*Robinson v. Farley*,
264 F. Supp. 3d 154 (D.D.C. 2017) ........ 2

*Rudometkin v. United States*,
140 F.4th 480 (D.C. Cir. 2025) ........ 2

*Norton v. S. Utah Wilderness All.*,
542 U.S. 55 (2004) ........ 9

*Save Jobs USA v. Dep't of Homeland Sec.*,
942 F.3d 504 (D.C. Cir. 2019) ........ 2

*Sierra Club v. EPA*,
292 F.3d 895 (D.C. Cir. 2002) ........ 7

*Univ. of Texas v. Camenisch*,
451 U.S. 390 (1981) ........ 3

**Statutes**

42 U.S.C. § 1870(c) ........ 8

42 U.S.C. § 1873(e) ........ 8

Defendants respectfully submit this reply in further support of their combined motion to strike and cross-motion for summary judgment ("Defs.' Mot.," Dkt. 47).

**ARGUMENT**

**I. <u>The Court Should Strike Plaintiffs' Exhibits.</u>**

The Foundation established that Plaintiffs impermissibly introduced evidence outside the administrative record in this APA matter. Defs.' Mot. (Dkt. 47) at 17-20.

Plaintiffs' sole argument to the contrary fails. Opp'n (Dkt. 48) at 5-6. They say the purpose of the declarations is to establish "their standing" by "setting forth extensive, specific, additional facts by declaration." *Id*. at 5. But as Defendants explained in their motion, Plaintiffs did not advance any standing argument in their opening motion. Defs.' Mot. (Dkt. 47) at 18. Yet, Plaintiffs extensively cited to those declarations, Pls.' Mem. (Dkt. 43-7) 15-17, which is inconsistent with their recent assertion as to the declarations' purpose. To the extent Plaintiffs now advance perfunctory standing arguments, Opp'n (Dkt. 48) at 6-10, they do so by primarily relying on declarations submitted as part of their motion for preliminary injunction, *id*. at 8 (citing Cunningham Decl. (Dkt. No. 3-4); Franklin Decl. (Dkt. 3-9); Bang Decl. (Dkt. No. 3-14); Levine Decl. (Dkt. No. 3-12)). And while they also cite in a footnote some of the new declarations, they do so without much discussion. *Id*. at 8 n.3. As explained further below, the Court need not consider perfunctory and undeveloped arguments, nor sift and sort through the record. In short, the Court should strike any declarations it does not consider as part of its jurisdictional analysis.

**II. <u>The Court Should Grant Defendants' Cross-Motion for Summary Judgment</u>**

**A. Plaintiffs Have Failed to Establish Standing.**

Plaintiffs did not even attempt to establish their standing in their opening brief. *See generally* Pls.' Mem. (Dkt. 43-1). They now press three arguments to establish standing: (1) the Court already determined that WEPAN has standing, Opp'n (Dkt. 48) at 6-7, (2) WEPAN, AAPT,

and AERA each has associational standing, *id*. at 8-9, and (3) AAPT and AAC&U have organizational standing, *id*. at 9-10. Standing must be evaluated claim-by-claim, *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 185 (2000), under the standard applicable at the relevant stage of the proceeding, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Because this case is at the summary judgment stage, Plaintiffs must "set forth by affidavit or other evidence specific facts demonstrating standing." *Save Jobs USA v. Dep't of Homeland Sec.*, 942 F.3d 504, 509 (D.C. Cir. 2019).

As an initial matter, Plaintiffs do not advance any argument, in their opening motion or in opposition to the Foundation's cross-motion, that Plaintiffs American Association of University Professors ("AAUP") or the International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America ("UAW") have standing. *See generally* Pls.' Mem. (Dkt. 43-1); Opp'n (Dkt. 48). Both AAUP and UAW are plaintiffs in this case. *See* Compl. (Dkt. 2-1) ¶¶ 21, 22. Indeed, Plaintiffs effectively concede as much when they argue only that "WEPAN, AAPT, AERA, and AAC&U have standing to sue." Opp'n (Dkt. 48) at 10. "This Court need not . . . address undeveloped arguments[.]" *Robinson v. Farley*, 264 F. Supp. 3d 154, 162 (D.D.C. 2017). "It is plaintiff's task to spell out his arguments squarely and distinctly." *Raines v. Dep't of Just.*, 424 F. Supp. 2d 60, 66 n.3 (D.D.C. 2006) (citation modified). "[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are deemed waived." *Johnson v. Panetta*, 953 F. Supp. 2d 244, 250 (D.D.C. 2013). Indeed, "a party forfeits an argument by failing to raise it in its opening brief." *Rudometkin v. United States*, 140 F.4th 480, 491 (D.C. Cir. 2025). As a result, Plaintiffs have not carried their burden to establish standing as to AAUP and UAW. *Lujan*, 504 U.S. at 561.

Plaintiffs primarily assert that WEPAN has standing. They first argue that the Court need not revisit its prior finding that WEPAN has associational standing to press the remaining APA claims. Opp'n (Dkt. 48) at 6-7. But, "the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). More, the Court should revisit its finding that "WEPAN has associational standing," which this Court based on the assumption that "WEPAN member Elizabeth Litzler would have standing to sue in her own right." *Am. Ass'n of Physics Teachers, Inc. v. NSF*, 804 F. Supp. 3d 45, 68-69 (D.D.C. 2025). That assumption, respectfully, is not supported by the record.

Litzler is not a WEPAN member; the "University of Washington is a member of [WEPAN]." Litzler Decl. (Dkt. 3-10) ¶ 6. Litzler is "the named member representative for the University of Washington's membership." *Id.* She offered her declaration in her "individual capacity and not on behalf of [her] employer." *Id.* ¶ 5. And the Court found an injury to the "Center for Evaluation & Research for STEM Equity at the University of Washington" based on "sixteen grant proposals that are currently under review at the Foundation." *Am. Ass'n*, 804 F. Supp. 3d at 69. Rightly so, because Litzler's testimony is unequivocal: "My Center currently has [sixteen] grant proposal under review at [the Foundation.]" Litzler Decl. (Dkt. 3-10) ¶ 30; *see also* Litzler Suppl. Decl. (Dkt. 43-5) ¶ 9 ("CERSE currently has [eighteen] grant applications under review at [the Foundation]").

In other words, Litzler neither is a WEPAN member, nor has suffered any personal harm that would give her standing to sue—at most, her declaration is relevant to whether the university has standing (but as explained further below, it does not). Either way, WEPAN cannot rely on Litzler's alleged individual injuries, whatever they may be, to support its associational standing

because an organization may invoke associational standing "to sue on behalf of its members only" and requires that "at least one of its members" has standing. *Am. Ass'n*, 804 F. Supp. 3d at 68.

And even if Litzler was a member, Plaintiffs have not provided sufficient evidence to establish her own (or the university's) standing. Plaintiffs argue that the expenditures to prepare grant proposals that may have been submitted prior to the Statement of Priorities suffice. Opp'n (Dkt. 48) at 8-9. But to constitute an injury-in-fact sufficient to maintain standing Plaintiffs must demonstrate that their asserted injury is an "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. For the grant proposal expenditures to constitute an "actual or imminent" injury, Plaintiffs must demonstrate that those grants were denied because of the Statement of Priorities. Otherwise, that alleged injury remains entirely speculative: it is unknown whether the Foundation would grant or deny any one proposal. In that sense, Plaintiffs' claims are not ripe. *Nat'l Digital Inclusion All. v. Trump*, --- F. Supp. 3d ---, 2026 WL 2042806, at *16-17 (D.D.C. Jul. 15, 2026).

Indeed, in nearly identical circumstances, a court in this district recently determined that a plaintiff's APA claims challenging a government policy was "unripe." *Id*. at *17. In 2025, the President ended a program created by the Digital Equity Act; in the President's opinion, "the Digital Equity Act was unconstitutional because it required the allocation of federal funding on the basis of race." *Id*. at *3. As part of the termination, the government also terminated certain grants to the National Digital Inclusion Alliance ("NDIA"). *Id*. NDIA sued, bringing constitutional and APA claims. *Id*. As relevant here, one of the APA claims was to "challeng[e] the government's policy—articulated in an April 9, 2021, email—prohibiting grantees from requesting reimbursements for costs incurred from conferences, training, and professional development programs associated with diversity, equity, and inclusion efforts." *Id*. at *16. Like

Plaintiffs here, NDIA challenged "that policy on a prospective basis." *Id*. The court concluded that the claim was not ripe because "it is not clear how the government intended to apply its new policy—for example, what kinds of programming it would deem impermissibly associated with diversity, equity, and inclusion issues." *Id*. at *17. In other words, it was "premature to say how the policy articulated in the April 9 email will apply to future applicants." *Id*. And the Court could not review that policy "on speculation about how the policy will be applied or even that the same policy will apply to the renewed program" especially where "the policy has not yet been applied to any future application by NDIA." *Id*.

So too here. Plaintiffs insist that the Court should assume the only possible outcome for any one pending application is a denial because of the Statement of Priorities. But they have proffered no facts to support that inference. Plaintiffs certainly do not argue that an applicant is in any way injured by having their applications granted and funds awarded pursuant to the Statement of Priorities, another possible outcome of a grant application adjudication. Nor have they argued that they are being denied "the opportunity to compete for a pool of funds for which they are able and willing to compete." *Global Health Council v. Trump*, 153 F.4th 1, 12 (D.C. Cir. 2025). Plaintiffs alleged injury of having expended time, energy, or funds on grant applications that in the future may be denied "is too speculative to satisfy the well-established requirement that threatened injury must be certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013).

"And even if [Plaintiffs] could demonstrate that the threatened injury is certainly impending, they still would not be able to establish that this injury is fairly traceable" to the Statement of Priorities. *Id*. at 401-02. Plaintiffs' entire argument rests on the speculative assumption that the Foundation will deny their existing proposals solely based on the Statement

of Priorities. But Plaintiffs have not alleged, and a year later have not argued, that any of their grant applications were denied, or are about to be denied, because of the Statement of Priorities. And each grant application is subject to a rigorous merit review process that considers both the intellectual merit and the broader impacts of a proposed project. AR_000141. A grant application, therefore, may be denied for any number of reasons. For instance, a program may not have sufficient funds available to approve every grant application submitted for review, or a grant application may not be as competitive in relation to other applications considered during the merit review process.

AAPT's and AERA's standing argument fails for the same reason. Plaintiffs assert that those organizations have associational standing because each organization "either had (1) members who had pending [Foundation] grant applications that were implicated by the [Statement of Priorities] Decision, and into which they had invested time and effort; and/or (2) members who had active [Foundation] grants that were vulnerable to termination under the [Statement of Priorities] Decision." Opp'n (Dkt. 48) at 8. As explained above, an alleged pending grant application is insufficient to establish injury-in-fact. For similar reasons, a fear that existing grants may be terminated is not a ripe claim that can support standing. That claim, too, invites the Court to predict a specific chain of future events—that an existing grant would be terminated and that such termination would be because of the Statement of Priorities. But grants may be terminated for a variety of reasons. Such injury, therefore, is both too speculative, *Clapper*, 568 U.S. at 401, and not ripe for adjudication, *Nat'l Digital*, 2026 WL 2042806, at *16-17.

Regardless, this Court lacks subject-matter jurisdiction to adjudicate grant termination claims. As this Court previously found, grant termination claims "fall within the Court of Federal Claims' exclusive jurisdiction" because "Plaintiffs seek relief that in effect enforces the

Foundation's obligation to pay their cancelled grant money" which "is, in essence, a contract action." *Am. Ass'n.*, 804 F. Supp. 3d at 66.

Plaintiffs counter with the erroneous proposition that organizational standing is irrelevant when evaluating associational standing. Opp'n (Dkt. 48) at 9. Not so. A key element of associational standing is that at least one association member must "have standing to sue in his own right." *Sierra Club v. EPA*, 292 F.3d 895, 898 (D.C. Cir. 2002). Far from being irrelevant in these circumstances, organizational standing is a critical component of the associational standing analysis. That is because Plaintiffs must establish a member's standing to sue. And, as explained above, none of the associations have alleged the existence of a member with a direct injury (denied application); therefore, organizational standing is the sole remaining avenue to establish standing. This Court confirmed as much in its analysis of WEPAN's associational standing when it cited to the part of *Abigail All. for Better Access to Dev. Drugs v. Eschenbach*, discussing organizational standing. *Am. Ass'n.*, 804 F. Supp. 3d at 69 (quoting 469 F.3d 129, 132–33 (D.C. Cir. 2006)).

In sum, Plaintiffs have not established their standing to challenge the Statement of Priorities. *Lujan*, 504 U.S. at 561.

**B. Plaintiffs' Claims Fail on the Merits.**

1. Plaintiffs' Claims Are an Impermissible Programmatic Challenge.

The Foundation established that Plaintiffs' claims and requested relief are an impermissible programmatic challenge. Defs.' Mot. (Dkt. 47) at 24-26. As the Foundation explained, the Change of Priorities is not a final agency action because the Foundation took additional steps to implement the Change of Priorities – by identifying and terminating grants. Likewise, to implicate the Change of Priorities prospectively, a plaintiff would need to apply for a grant and that grant be refused. *Id*. at 24-25.

Plaintiffs counter with a string cite to out-of-circuit cases. Opp'n (Dkt. 48) at 13-14. But nothing in those cases overcomes the law in this Circuit distinguishing between unreviewable "general statements of policy" and the binding "rules" typically subject to APA review. *Cntr. for Auto Safety v. NHTSA*, 452 F.3d 798, 807 (D.C. Cir. 2006). The Statement of Priorities certainly contains the Foundation's views on how it may evaluate future grant proposals. But it does not, by itself, determine rights and obligations. *Id*. at 806 (citing *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)). Those rights and obligations are determined upon the adjudication of each grant application. Until then, pre-enforcement review is not available under the APA. *Nat'l Min. Ass'n v. McCarthy*, 758 F.3d 243, 250-53 (D.C. Cir. 2014).

2. <u>Grant Administration is Committed to Agency Discretion.</u>

The Foundation established that grant administration is unreviewable under the APA. Defs.' Mot. (Dkt. 47) at 26-27. Plaintiffs readily concede that at least two separate provisions vest in the Foundation the discretion to make grants that advance the Foundation's purpose. Opp'n (Dkt. 48) at 13 (quoting 42 U.S.C. § 1870(c) and 42 U.S.C. § 1873(e)). Irrespective of the unspecified statutory provisions Plaintiffs invoke, it is still uncontested that the Foundation issues grants from lump sum appropriations. And "the very point of a lump-sum appropriation is to give an agency the capacity to adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way." *Lincoln v. Virgil*, 508 U.S. 182, 191-92 (1993).

3. <u>Plaintiffs' Arbitrary and Capricious Claim Fails.</u>

The Foundation established that adopting the Statement of Priorities was not arbitrary and capricious. Defs.' Mot. (Dkt. 47) at 28-31. Specifically, the administrative record shows that the Foundation implemented executive policy and considered Congressional criticism in funding specific types of projects. *Id*. at 28-29.

Plaintiffs primarily counter that implementation of a presidential directive does not insulate the agency action "from judicial review under the APA[.]" Opp'n (Dkt. 48) at 17 (citing *Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322, 1327 (D.C. Cir. 1996)). Plaintiffs misunderstand the Foundation's argument. As the Foundation explained, the executive orders gave the Foundation the new Administration's policy framework. But the Foundation was not "rubber-stamping" those executive orders, Opp'n (Dkt. 48) at 21, because it did not rely on them as the sole sources of its authority; rather, the Foundation leveraged the NSF Act of 1950—the Foundation's long-standing organic authority—to draft and implement the President's policies and respond to specific Congressional criticism, Defs.' Mot. (Dkt. 47) at 28-29. Plaintiffs may disagree with the President's policies, Congress's criticism, or the Foundation's response. But that is no basis to accommodate their demand that the Foundation return to its former practice—aggressively advanced by the prior administration—of funding "projects related to diversity, equity, and inclusion," "environmental justice," or "spread of misinformation." Pls.' Mem. (Dkt. 43-1) at 8. That is a quintessential "abstract policy disagreement[]" this Court should decline to arbitrate. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 66-67 (2004). Plaintiffs' policy quibbles are no reason to deny, as Plaintiffs' apparently urge, the consequences of the last election and the entitlement of the new administration "to reevaluate and modify agency practices, even longstanding ones." *People for the Ethical Treatment of Animals v. Dep't of Agric.*, 918 F.3d 151, 158 (D.C. Cir. 2019). Even were the Court to disagree with the Foundation's policy choices, the agency's choice was reasonable and the Court "is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

The Foundation also established that Plaintiffs' reliance interest argument fails because they have no legally protectible reliance interest in grants that have not been awarded. Defs.' Mot.

(Dkt. 47) at 29. Perhaps recognizing the futility of their arguments, Plaintiffs apparently withdraw that argument. Opp'n (Dkt. 48) at 18 ("But Plaintiffs did not argue that NSF failed to consider anyone's reliance on individual grant funding"); *contra* Pls.' Mem. (Dkt. 43-1) ("NSF failed to acknowledge that its policy pivot would cut off critically important research projects midstream, causing researchers and educators to lose their jobs and derail countless careers of promising contributors to STEM fields.").

4. Plaintiffs' Contrary to Law Claim Fails.

The Foundation showed that the Statement of Priorities is not contrary to law. Defs.' Mot. (Dkt. 47) 31-33. As the Foundation explained, § 1862-p14(a)(7) is one of seven statutorily enumerated criteria the Foundation should consider and nothing in the statutory text indicates that Congress required the Foundation to simultaneously support, or otherwise prioritize, one over the others. *Id*. Plaintiffs' virtually entire submission in opposition is to recap the Foundation's position but offers no meaningful response. Opp'n (Dkt. 48) at 15-16.

Plaintiffs instead assert that the Foundation forfeited any argument to show that the Statement of Priorities is "consistent with the overall statutory scheme." Opp'n (Dkt. 48) at 15. The Foundation already established that the Statement of Priorities is consistent with the goal of "broadening participation of women and underrepresented populations in STEM." Defs.' Mot. (Dkt. 47) 31-33. Plaintiffs complain that the Foundation focused its discussion on § 1862p-14(a)(7). Opp'n (Dkt. 48) at 15. But that should be unsurprising because Count II only invokes that provision as the basis for its asserted contrary to law claim. Compl. (Dkt. 2-1) ¶ 167. Whatever other stated or unstated statutory provisions Plaintiffs may have referenced in their opening motion are irrelevant because it is "axiomatic that a party may not amend his complaint through" a brief. *Does 1-9 v. Dep't of Just.*, Civ. A. No. 25-0325 (JMC), 2025 WL 1984428, at *15 (D.D.C. Jul. 17, 2025). Plaintiffs' argument thus fails.

## CONCLUSION

For these reasons and the reasons set forth in Defendants' motion for summary judgment (Dkt. 47), Defendants respectfully request that the Court grant their motion (Dkt. 47), deny Plaintiffs' motion (Dkt. 43), and enter judgment for Defendants on the remaining claims.

Dated: September 17, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: /s/ *Dimitar P. Georgiev*
Dimitar P. Georgiev, D.C. Bar #1735756
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252 – 7678

*Attorneys for the United States of America*